1   ULRICO S. ROSALES, State Bar No. 139809
    Email: rrosales@wsgr.com
2   MEAGHAN SNYDER, State Bar No. 279392
    Email: msnyder@wsgr.com
3   WILSON SONSINI GOODRICH & ROSATI
    Professional Corporation
4   650 Page Mill Road
    Palo Alto, CA 94304-1050
5   Telephone: (650) 493-9300
    Facsimile: (650) 565-5100
6
    Attorneys for Plaintiff
7   CUTERA, INC.

8                   UNITED STATES DISTRICT COURT

9                   EASTERN DISTRICT OF CALIFORNIA

10  CUTERA, INC.,                          )  CASE NO.: 2:20-CV-00235-KJM-DB
                                           )
11          Plaintiff,                     )  **DECLARATION OF ULRICO S.**
                                           )  **ROSALES IN SUPPORT OF**
12      v.                                 )  **PLAINTIFF'S *EX PARTE***
                                           )  **APPLICATION FOR TEMPORARY**
13  LUTRONIC AESTHETICS, INC., and         )  **RESTRAINING ORDER AND**
    Does 1-20.                             )  **ORDER TO SHOW CAUSE RE:**
                                           )  **PRELIMINARY INJUCTION AND**
14                                         )  **FOR ORDER RE PRESERVATION**
            Defendants.                    )  **OF EVIDENCE**
15                                         )
                                           )
16                                         )
                                           )
17                                         )
                                           )  Before: The Hon. Kimberly J. Mueller
18                                         )  Magistrate Judge Deborah Barnes
                                           )
19                                         )  Complaint Filed: January 31, 2020
                                           )  Jury Trial Demanded
20  _____   )

21

22

23

24

25

26

27

28  DECL. OF U. ROSALES ISO PLAINTIFF'S *EX*          -1-          11396728_2.docx
    *PARTE* APPLICATION FOR TEMPORARY
    RESTRAINING ORDER AND ORDER TO
    SHOW CAUSE RE: PRELIMINARY
    INJUCTION AND FOR ORDER RE
    PRESERVATION OF EVIDENCE
    CASE NO. 2:20-CV-00235-KJM-DB

I, Ulrico S. Rosales, hereby declare as follows:

1. I am duly admitted to practice law in the State of California, including in this Court. I am a Member of the firm Wilson Sonsini Goodrich & Rosati, counsel of record for Plaintiff, Cutera, Inc. ("Plaintiff"). I have personal knowledge of the matters set forth herein and, if called as a witness, could and would competently testify thereto.

2. Attached hereto as **Exhibit A** is a true and correct copy of a document supplied to me by Lighthouse Global, Inc., the forensics vendor assisting in this matter. Lighthouse recovered this document as part of its examination of Larry Laber's computer, and Kevin Clark refers to the document in paragraph 10 of his declaration.

3. Attached hereto as **Exhibit B** is a true and correct copy what appears to be Jina Kim's draft offer letter for Lutronic dated January 17, 2020. Lighthouse supplied this document to me as one it recovered as part of its examination of Ms. Kim's computer, as discussed in paragraph 12 of his declaration..

4. On February 19, 2020, Lutronic hired another employee, bringing the number of Cutera hires since January 17, 2020 to at least 13. Lutronic's counsel telephoned me to inform me of this fact.

5. On February 13, 2020, prior to filing the application for a Temporary Restraining Order ("TRO"), I sent an email to counsel for the Former Cutera Employees demanding they return to Cutera all external storage devices used to access and/or store Cutera information and demanding access to all cloud storage accounts used to store any information relating to or referring to their employment with Cutera or Lutronic. A true and correct copy of this email is attached hereto as **Exhibit C.**

6. On February 14, 2020, counsel for the Former Cutera Employees responded to my email stating that she had advised them of their obligations to preserve evidence, but that counsel's forensic expert had already taken custody of relevant personal external hard drives and cloud storage

DECL. OF U. ROSALES ISO PLAINTIFF'S *EX
PARTE* APPLICATION FOR TEMPORARY
RESTRAINING ORDER AND ORDER TO
SHOW CAUSE RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-2-

11396728_2.docx

1  accounts from the Former Cutera Employees. She refused to turn the accounts and drives over to
2  Cutera. A true and correct copy of this email is attached hereto as **Exhibit D**.

3    7.    That same day, I responded to counsel for the Former Cutera Employees reiterating
4  my demand that they return the external storage devices and cloud accounts to Cutera so that
5  Cutera's forensic expert could assess the threat to its trade secrets posed by their actions. In the
6  alternative, I demanded that her clients do the following by 5:00 p.m. on Saturday February 15, 2020:

- Provide Cutera an inventory log of the devices and accounts that the Former Cutera Employees turned over to defense counsel's forensics firm, as well as the date on which they returned each device and/or account;

- Provide Cutera's forensic expert (Lighthouse) with a copy of each forensic image of any device or account it secured from the Former Cutera Employees so that Lighthouse can perform its forensic analysis with those images and determine what information was removed, deleted, altered or transferred;

- Provide a declaration from each of the Former Cutera Employees, under penalty of perjury, stating that (i) the above-referenced log reflects each and every device or account to which they transferred any Cutera information since January 1, 2019; (ii) they no longer have the rights or ability to access the devices or accounts; (iii) that post-termination from Cutera they have not accessed the devices or accounts since transferring information to the devices or accounts; (iv) they have not deleted, altered, destroyed or transferred any of the information on the devices or accounts post-termination from Cutera, or if they cannot make that representation, identify what information has been deleted, altered, destroyed or transferred; and (v) they have not stored or retained any of the information stored on the devices or accounts in any other location, or on any other device, including their personal computers.

25  A true and correct copy of this email is attached hereto as **Exhibit E**.

26    8.    Counsel for the Former Cutera Employees refused Cutera's requests.

9. On February 16, 2020, counsel for the Former Cutera Employees and I had a telephone conference in which I informed her about the details of Cutera's forensic experts having determined that each of the Former Cutera Employees had connected external USB drives and copied and deleted data from their Cutera-issued laptops. I emphasized the gravity of her clients' actions and Cutera's concerns regarding not knowing the extent of her clients' wrongdoing given their refusal to provide the forensic images of the external devices to Cutera's outside forensic expert. Instead of providing the images, defense counsel refused and instead continued to demand that Cutera relinquish the results of its forensic examinations of the Cutera owned hard drives to her.

10. On February 18, 2020, counsel for the Former Cutera Employees sent me a follow up letter after our discussion on February 16. She asserted she would not be providing the forensic images of the external devices to Cutera's forensic expert and would not confirm to what extent the devices contained Cutera information and documents, despite the external devices being in defense counsel's forensic expert's possession for 11 days with respect to Mr. Laber, and eight days with respect to Ms. Kim. A true and correct copy of this letter is attached hereto as **Exhibit F**.

11. Alarmingly and suspiciously in counsel's February 18 letter, counsel for the Former Cutera Employees also informed me that on January 31, Kim "lost" an external drive containing Cutera information while on a plane, without explaining why she had it with her 14 days after quitting.

12. On February 19, 2020, I spoke with counsel for Lutronic and counsel for the Former Cutera Employees to try and reach an acceptable solution to avoid Cutera's need for a TRO. Cutera requested that (1) Lutronic agree not to hire or solicit any Cutera employees for a period of time to allow the parties to ascertain the extent of Cutera Trade Secret Information misappropriated by the Former Cutera Employees; (2) Lutronic provide a list of employees to whom it had made offers of employment; (3) Lutronic and the Former Cutera Employees agree not to use or disclose Cutera Trade Secret Information; and (4) the Former Cutera Employees submit declarations every 20 days confirming they have not used or disclosed Cutera trade secrets.

DECL. OF U. ROSALES ISO PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUCTION AND FOR ORDER RE PRESERVATION OF EVIDENCE CASE NO. 2:20-CV-00235-KJM-DB

-4-

11396728_2.docx

13.     Unfortunately, the parties were not able to reach an agreement.

14.     The temporary restraining order is necessary because Defendant Lutronic and its employees have taken and are using Cutera's Trade Secret Information and are using it to compete unlawfully against Cutera, including using it to solicit and hire approximately 13 employees to the detriment of Cutera

15.     The parties are unable to stipulate for issuance of such an order because Lutronic and the Former Cutera Employees will not agree to Cutera's reasonable demand for assurances.

16.     The request cannot be noticed on the court's motion calendar as provided by Local Rule 230 because of the threat of irreparable harm given that Lutronic employees have downloaded and transferred Cutera trade secrets to external accounts or devices and have deleted Cutera information and relevant evidence. An expedited hearing is necessary to immediately stop this conduct from further damaging Cutera and to preserve evidence.

17.     On February 19, 2020, I notified Dana Finberg, counsel for Lutronic, via email of Cutera's intent to submit ex parte papers for a Temporary Restraining Order against Lutronic and specifically notified him of the nature of the relief to be requested. Later that day, along with counsel for the former Cutera Employees, the parties met and conferred regarding Cutera's intent to file an application for a TRO. See Paragraph 12. Counsel for Lutronic has informed me that Lutronic intends to file an opposition to the TRO application.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration is executed this 20th day of February 2020, at Palo Alto, California.

Ulrico S. Rosales

DECL. OF U. ROSALES ISO PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUCTION AND FOR ORDER RE PRESERVATION OF EVIDENCE CASE NO. 2:20-CV-00235-KJM-DB

11396728_2.docx

# EXHIBIT A



≡ **M** Gmail

🔍 in:sent

Compose

Inbox     1,266

Starred

Snoozed

Important

**Sent**

**Drafts**     15

🏷 **Categories**

🏷 Notes

🏷 Personal

🏷 Travel

    More

👤 llaser1     +

🧑 **Anna Perez**
36 **Allada Loo: I would like to meet sor**

🧑 **Laura Sanders**
22 **twhenshaw606@gmail.com: hi**

# Term Sheet as discussed on 11/10

👤 **llaser1** <larry.laber89@gmail.com>
to ben

This is the Sheet from HL at Lutronic. #1-4 is from Lutronic.

Title- Chief Commercial Officer reporting directly to me,

1) Salary: $480,000 p.a.

2) Bonus:
- 2% of the sales growth from previous year, to be paid at the beginn
- $220,000 p.a. bonus guaranteed in 2020 and 2021 (i.e. minimum c

3) Equity:
- 100,000 options on Lutronic Korea shares listed in Korea (exercisa
- 250,000 options on Lutronic US shares (exercisable over 4 year pe

4) Severance:
- 1 year severance (previous year's salary and bonus) + Health
- COC Agreement: Employee keeps options if terminated without ca

If you agree on these terms, I will proceed with the contract. The con

Best,

Haelyung

Windows 10용 메일에서 보냄


**LUTRONIC**®

Error checking mail for larrylaber@mail.com.    **Details**    **Dismiss**

Exhibit A        Page 1

# EXHIBIT B

1-17-2020

Jina Kim
1614 Fell Street, Apt 1
San Francisco, CA
94117

Dear Jina:

On behalf of Lutronic Aesthetics, Inc. including its affiliates (collectively, the "Company"), it is my pleasure to offer you the position of Director of Professional Relationships & Programs, beginning on January 20, 2018 ("Start Date"), under the following terms and conditions:

0. Your general responsibilities will include, but are not limited to, the following:
0. Actively support the Company Leadership team
1. PLEASE ADD
2. Work remotely from your home in California on a full-time basis
0. Any other projects or responsibilities deemed necessary by the Company

   Nothing in this provision prohibits or precludes the Company from adding to, limiting, or otherwise altering your responsibilities in the position.

1. Compensation: Your compensation shall be reviewed annually and may be adjusted, in whole or in part, by Company from time to time in accordance with the employee compensation policies then in effect. All forms of compensation referred to in this letter are subject to reduction to reflect applicable withholding and payroll taxes.
   A. Base Salary: You will receive a base salary at the rate of $225,000 per year, less applicable taxes, payroll deductions, and any required withholdings, payable in accordance with the normal payroll practices of Lutronic. As an exempt employee, you will not be entitled to overtime.

   B. Variable Compensation: You will be eligible for variable compensation that will be outlined by the Chief Commercial Officer and discussed with you by or before February 20, 2020.

   C. Equity:  Subject to the approval of the board of directors ("Board") of Lutronic Aesthetic, Inc., which may not be withheld without just cause, you shall be granted an option to acquire 75,000 shares of the common stock of Lutronic Aesthetic, Inc., with such option (i) having an exercise price equal to the fair market value of Lutronic Aesthetic, Inc.'s common stock on the date of grant, as determined by the Board, (ii) vesting based on continued service with Lutronic Aesthetic, Inc. with respect to 25% of the shares subject to the option on the first anniversary of the Start Date and with respect to 2.0833% of the shares subject to the option on each monthly anniversary thereafter, and (iii) being subject to limitations on exercisability and such other terms and conditions set forth in the applicable option agreement and Lutronic Aesthetic, Inc.'s 2018 Equity Incentive Plan.


   3. H1B Visa:  The Company agrees to sponsor your H1B visa application. and Green Card.  (it's currently in process – need provision if H1B isn't transferred immediately then provisions for working from Canada have to be made – i.e. expenses for being in Canada while keeping my apartment here during the transition)

   4. Expense Reimbursement: Upon presentation of supporting documentation and consistent with

Company policies, you will be reimbursed for reasonable, necessary direct out-of-pocket expenses incurred in connection with your job performance. Any travel, lodging, and entertainment-related expenses shall require advance approval by your Company manager or higher.

5. Employee Benefits: As an employee of the Company, you may be eligible to receive Company-sponsored benefits, such as the health insurance, paid and unpaid leave in accordance with Lutronic policies. You will accumulate vacation with normal payroll practices during the year. You will accrue 10 vacation days per year, and will be granted 5 sick days per year (prorated year 1). Vacations shall be scheduled in advance and approved by your Company manager or upper management to minimize any disruption to your department, team, and the Company business. In the event of any conflict between this letter or any oral statement regarding your benefits and the Employee Handbook, the Employee Handbook controls. Benefits are subject to change or may be discontinued consistent with changes in the Company's policies or employee benefit programs.

6. At Will Employment. Employment with the Company is for no specific period of time. Your employment with the Company will be "at will," meaning that either you or the Company will be entitled to terminate your employment at any time and for any reason, with or without cause. Any contrary representations, which may have been made to you, are superseded by this offer. This is the full and complete agreement between you and the Company on this term. Although your job duties, title, compensation and benefits, as well as the Company's personnel policies and procedures may change from time to time, the "at will" nature of your employment may only be changed in an express written agreement signed by you and a Company Vice President or higher.

0. Working Hours. Normal working hours are set forth in the Employee Handbook. Any variance of your work time shall be discussed in advance and approved by Company Vice President or higher. As an exempt salaried employee, you may be expected to work additional hours as may be required by the nature of your work assignments. As a full-time employee of the Company, you may not engage in other employment or consulting activities with any other company, enterprise or business, whether or not compensated, if it conflicts with Company work hours or represents a conflict of interest without the prior written consent of the Company's Chief Executive Officer.

1. Confidentiality; Compliance with Policies. As an employee of the Company, you will have access to certain confidential information and trade secrets of the Company and you may, during the course of your employment, develop certain information or inventions that will be the property of the Company. To protect the interests of the Company, as a condition of your employment you are required to sign the Company's "Trade Secrets and Confidentiality Agreement" by your Start Date. A copy of that agreement is attached hereto as Exhibit A. You agree to be bound by the policies and procedures of the Company now or hereafter in effect relating to the conduct of employees, including, but not limited to, the Employee Handbook, to the extent not inconsistent with the terms of this offer letter. You are to review, sign, and accept the Employee Handbook Acknowledgment Form by your Start Date.

2. Non-Solicitation. To protect the Company's proprietary information and customer goodwill from misappropriation and unlawful use, during your employment and for a period of twelve (12) months following the termination of your employment (the "Restricted Period"), you will not directly or indirectly, whether as owner, partner, shareholder, director, manager, consultant, agent, employee, co-venturer or otherwise, other than for the benefit of the Company, call upon, solicit, divert, take away, accept or conduct any business from or with any of the customers or prospective customers of the Company with whom you had actual contact during the employment period or any of its suppliers. In addition, you agree that during the Restricted Period, you will not solicit, entice, attempt to persuade any other employee or consultant of the Company to leave the Company for any reason or otherwise participate in or facilitate the hire, directly or through another entity, of any person who is employed or engaged by the Company within the last twelve (12) months of your employment with the Company. You acknowledge and agree that if you violate any of the provisions of this paragraph, the running of the Restricted Period will be extended by the time during which you engage in such violation(s).

3. Ownership of Intellectual Property; Assignment of Rights. You hereby assign to the Company any right, title and interest to all Intellectual Property. You acknowledge and agree that any and all copyrightable works you created during your employment are "works for hire." You further agree to execute any and all applications for domestic or foreign patents, copyrights, and other proprietary rights and to do such other acts (including, among others, the execution and delivery of instruments of further assurance or confirmation) requested by the Company to assign the Intellectual Property to the Company and to permit the Company to enforce any patents, copyrights and other proprietary rights in the Intellectual Property. You will not charge the Company for time spent in complying with these obligations. For purposes of this letter, "Intellectual Property" means inventions, copyrightable works, discoveries, developments, clinical and other research materials, methods, processes, compositions, works, concepts and ideas (whether or not patentable or copyrightable or constituting trade secrets) conceived, made, created, developed or reduced to practice by you (whether alone or with others) during your employment that relate in any way to the business, products or services of the Company or to any prospective activity of the Company, or which were assisted in any way by Company resources or facilities. Intellectual Property includes, without limitation, all Confidential Information and trade secrets. Furthermore, you acknowledge and agree that, without obtaining prior written authorization from Company's CEO or General Counsel, you are prohibited from (a) publishing any information or materials related to or arising out of your employment at the Company, and (b) mentioning the Company in any published work.

4. This letter confirms your representation to us that (i) you are not a party to any employment agreement or other contract or arrangement which prohibits your full-time employment with the Company; (ii) you will not disclose any trade secrets or confidential information of any third party to the Company; and (iii) you do not know of any conflict that would restrict your employment with the Company.

5. This letter and the attached Trade Secrets and Confidentiality Agreement set forth the entire understanding between the parties concerning the matters addressed herein. Except for the Trade Secrets and Confidentiality Agreement, this offer letter supersedes all prior agreements, understandings, warranties or representations. You affirm that in accepting employment with the Company you do not rely upon any statements, promises, assurances, or representations other than what is set forth in this letter.

6. The terms of this offer shall be held in strict confidence between you and the Company.

7. This agreement shall be made, construed, and governed by the laws of the Commonwealth of Massachusetts. All legal actions arising under this agreement shall be instituted in, and both Lutronic and you specifically consent to jurisdiction in the Commonwealth of Massachusetts.

8. Counterparts. This offer letter, its Schedules. and Exhibits may be executed (i) in counterparts, each of which shall be an original, with same effect as if the signatures hereto were on the same instrument; and (ii) by facsimile or emailed scanned PDF, TIF, or JPG file. The parties agree that such facsimile, PDF, TIF, or JPG signatures shall be deemed original signatures for all purposes.

9. The terms and conditions of this offer letter will remain valid for ten (10) days from the date of this letter.  If not accepted by then, the offer will be deemed withdrawn.

10. By signing below, you hereby acknowledge that you have has read this offer letter and agree to abide by its terms. Further, you acknowledge that this letter is legally binding and that you have been given the right and opportunity to consult with legal counsel concerning the employment terms.

If this offer of employment is acceptable to you and correctly sets forth our mutual understanding and agreement, please sign the enclosed copy of this letter in the space provided and return it to me, at which time this letter will take effect as a binding agreement between Lutronic and you.

Sincerely, for and on behalf of Lutronic:

By: _____

Name: Haelyung Hwang

Title: CEO

Date: _____

I understand, agree to, and accept the terms of this offer:

Employee:

By: _____

Name: Jina Kim

Date: _____


☐

☐

EXHIBIT A

TRADE SECRETS AND CONFIDENTIALITY AGREEMENT

In consideration for employment with Lutronic Aesthetics, Inc., including its affiliates (the "Company"), Jina Kim ("Employee") agrees as follows:

0. Employee acknowledges that, as a result of employment with the Company, Employee will be provided or exposed to the Company's Trade Secrets and other Confidential Information of the Company. For purposes of this Trade Secrets and Confidentiality Agreement ("Agreement"), "Trade Secrets" means information, including a formula, pattern, compilation (including compilations of key person contact information), program, device, method, technique, or process, which both: (i) derives independent economic value, actual or potential, from not being generally known to or readily ascertainable by people who can obtain economic value from its disclosure or use; and (ii) is the subject of the Company's reasonable efforts to maintain its secrecy. The phrase "Confidential Information" means any and all information that Employee learned or developed during the course of employment with the Company, including information that is (i) not generally known to the public, and (ii) has commercial value in the Company's business. Such information includes, but is not limited to, inventions, ideas, methods, know how, designs, strategies, forecasts, Company sales, process and engineering information, information about new or future products or services, information about the Company's suppliers, the Company's marketing plans and goals, unpublished financial information, lists of the Company customers or prospects, information about customer or prospect purchases and preferences, information about licensees or licensors, information regarding research and development, consulting processes, management systems, computer software and programs, means of accessing the Company's computer systems or networks, algorithms, hardware configurations, Trade Secrets, information protected from disclosure by the Health Insurance Portability and Accountability Act ("HIPAA"), the Americans with Disabilities Act ("ADA"), Mass. Gen. Laws ch. 93H and 93I, and all other federal and state laws governing the confidentiality of information, and any other confidential information or intellectual property which provides the Company with a competitive advantage. Confidential information also includes confidential information of third parties regarding which the Company has accepted obligations of confidentiality.

Confidential Information also includes information regarding the policies and practices of the Company, and any actual, threatened or perceived claims, lawsuits, charges, and internal or external investigations relating to the Company.

    2. Employee agrees that at all times during and after employment with the Company, Employee will use the Company's Trade Secrets and Confidential Information only in direct performance of Employee's work for the Company. Employee agrees to hold the Company's Trade Secrets and Confidential Information in the strictest confidence and agrees to (i) preserve and protect the confidentiality of Trade Secrets and Confidential Information; (ii) take all actions necessary to avoid unauthorized disclosure and otherwise maintain the confidential or proprietary nature of Trade Secrets and Confidential Information; (iii) not, directly or indirectly, divulge, disclose or communicate any Trade Secrets or Confidential Information to any person or entity except pursuant to compulsion of legal process or other requirement of law; and (iv) not use any of the Company's Trade Secrets or Confidential Information for Employee's own benefit or the benefit of others.

    3. Employee agrees that, except as set forth below, Employee will maintain in confidence all Confidential Information or Trade Secrets unless or until: (i) Confidential Information or Trade Secrets shall have been made public by an act or omission of a party other than Employee through no fault of Employee's own; or (ii) Employee receives on a non-confidential basis such Confidential Information or Trade Secret from an unrelated third party who is not in breach of any fiduciary duty. Employee further agrees that, except as set forth below, Employee will not disclose Confidential Information or Trade Secrets to any person or entity other than to the Company or with the approval of the Company. Employee acknowledges and understands that any improper disclosure of Confidential Information or Trade Secrets by Employee may give rise to irreparable injury to the Company, which may not be adequately compensated by monetary damages, and that the Company shall be entitled, in addition to any other damages, to obtain without posting a bond, an injunction restraining Employee from disclosing, in whole or in part, the Confidential Information or Trade Secrets (or from rendering services to any person or entity to whom such Confidential Information, in whole or in part, may be or has been disclosed). Employee further acknowledges and understands that if Employee is found to have wrongly misappropriated Trade Secrets or Confidential Information, Employee may be liable for, among other things, treble damages and attorneys' fees. Employee understand that Employee has the right to disclose in confidence Trade Secrets to federal, state, and local government officials, or to an attorney, for the sole purpose of reporting or investigating a suspected violation of law. Employee further understands that Employee also has the right to disclose Trade Secrets in a document filed in a lawsuit or other proceeding, but only if the filing is made under seal and protected from public disclosure. Nothing in this Agreement is intended to conflict with 18 U.S.C. § 1833(b) or create liability for disclosure of trade secrets that are expressly allowed by 18 U.S.C. § 1833(b).

    4. Employee agrees that following the termination of Employee's employment with the Company, whether voluntarily or involuntarily, and for so long thereafter as the pertinent information or documentation remains a Trade Secret or Confidential Information, Employee will not, directly or indirectly use, disclose or disseminate to any other person, organization or entity or otherwise employ any of the Company's Trade Secrets or Confidential Information. The Company will pursue legal remedies for unauthorized use or disclosure of sensitive, confidential information or trade secrets.

    5. This Agreement constitutes the full and entire understanding and agreement of the parties hereto regarding the subject matter hereof and supersedes all prior agreements, drafts, or understandings, written or oral, between the parties with respect to the subject matter hereof.  Employee acknowledges and understands that this Agreement will be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts. If any portion of this Agreement shall to any extent be declared unenforceable or illegal by a court of competent jurisdiction, the remainder of this Agreement shall not be affected thereby, and each portion and provision of this Agreement shall be valid and enforceable to the fullest extent permitted by law.

☐

6. The terms of this Agreement shall be held in strict confidence between Employee and the Company.

I understand and agree to the terms of this Trade Secrets and Confidentiality Agreement:

Dated: _____

Print name: Jina Kim

Signature: _____

CONFIDENTIAL LUTRONIC INFORMATION 4

CONFIDENTIAL LUTRONIC INFORMATION

CONFIDENTIAL LUTRONIC INFORMATION 3

CONFIDENTIAL LUTRONIC INFORMATION

☐Item

<?xml version="1.0" encoding="UTF-8" standalone="no"?>

<b:Sources SelectedStyle="/APA.XSL" StyleName="APA"
xmlns:b="http://schemas.openxmlformats.org/officeDocument/2006/bibliography"
xmlns="http://schemas.openxmlformats.org/officeDocument/2006/bibliography"></b:Sources>

☐Properties

<?xml version="1.0" encoding="UTF-8" standalone="no"?>

<ds:datastoreItem ds:itemID="{3CF4ECCE-67B5-4965-A6AB-0CB41F1F7697}"
xmlns:ds="http://schemas.openxmlformats.org/officeDocument/2006/customXml"><ds:schemaRefs><ds:
schemaRef
ds:uri="http://schemas.openxmlformats.org/officeDocument/2006/bibliography"/></ds:schemaRefs></ds:d
atastoreItem>

Template:        Normal
Revision number:        1
Application:        Microsoft Office Word
Created:        2018/10/04 19:42:00
Last saved:        2020/01/17 21:55:00

# EXHIBIT C

| **From:** | Rosales, Rico |
| **Sent:** | Thursday, February 13, 2020 3:47 PM |
| **To:** | 'Katherine Huibonhoa' |
| **Cc:** | 'Daniel Lassen'; Snyder, Meaghan |
| **Subject:** | RE: Cutera v Laber, et al.: Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information |

Katherine. In my message below, I made clear that Cutera demands that your clients demanded the immediate production of storage devices, as well as access to all storage accounts used to store any information relating or referring to their employment at Cutera or Lutronic. I neglected to make clear that they return all such devices by 5:00 p.m. tomorrow, Friday, February 14, 2020. The devices can be returned to our Palo Alto offices.

**From:** Rosales, Rico
**Sent:** Thursday, February 13, 2020 1:48 PM
**To:** 'Katherine Huibonhoa'
**Cc:** Daniel Lassen; Snyder, Meaghan
**Subject:** Cutera v Laber, et al.: Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information

Katherine. I just left you a voice message. Our preliminary forensics analysis reveals that each of your clients (we are still waiting for results on Baker) accessed their Cutera computers before returning them and after Cutera advised each of them not to do so. To be clear, there is evidence establishing that each of your clients used external storage devices to copy and transfer information to those devices, and there is also significant evidence that your clients deleted relevant evidence, and also transferred of information to external cloud storage accounts. Cutera demands the immediate production of each external storage device used by your clients to access and/or store Cutera information, and similarly demands access to all cloud storage accounts used to store any information relating or referring to their employment at Cutera or Lutronic. Each of these devices and cloud accounts used by your clients contains evidence relevant to the ongoing litigation, and are subject to the prior non-destruction demand made on your clients on January 22, 2020. As the evidence is clear that your clients did not adhere to the original preservation demand, we wish to reiterate it here.

Whether or not your clients produce the storage devices (and provide access to the cloud accounts referenced) as demanded by Cutera, in light of the existing litigation between our respective clients, as well as Cutera's suit against Lutronic, your clients are hereby notified that under no circumstances should they destroy, delete, or otherwise discard any documents or information relating to Cutera, Lutronic, or Cutera's claims against your clients or Lutronic, including but not limited to all documents relating to: Cutera, any current or former Cutera employee or service provider (including those with whom Lutronic or any Lutronic representative has discussed Lutronic or employment with Lutronic), Cutera or Lutronic business information (whether confidential or not), and any communications with, or documents or presentations provided to, any potential or actual Lutronic employees or representatives. This preservation request applies no matter where such information resides, including any home computer(s), external storage devices, personal email accounts, or in cloud storage accounts. In particular, under no circumstances should your clients delete, destroy or alter the contents of any computer, other electronic device, or cloud storage account that may store or contain (or may have stored or contained documents potentially relevant to, or discoverable in, Cutera's arbitration proceeding against your clients or its lawsuit against Lutronic. Your clients' failure to abide by this notice may result in an additional claim for spoliation of evidence, an evidentiary inference or presumption of guilt, and a discovery sanction by a judge or arbitrator. Based on the information available to us at this juncture, Cutera will surely seek some remedy for your clients' brazen violation of their duties to preserve evidence.

1

Exhibit C                                                                   Page 1

# EXHIBIT D

| | |
|---|---|
| **From:** | Katherine Huibonhoa <KHuibonhoa@chjllp.com> |
| **Sent:** | Friday, February 14, 2020 1:39 PM |
| **To:** | Rosales, Rico |
| **Cc:** | Daniel Lassen; Snyder, Meaghan |
| **Subject:** | RE: Cutera v Laber, et al.:  Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information |

[External]
Hi Rico,

We have advised our clients of their obligations to preserve evidence.  To that end, our forensic expert already took custody of relevant personal external hard drives and cloud storage accounts from our clients (i.e., our clients no longer have access), and is creating forensic images of the personal devices and accounts, consistent with your reminder that our clients preserve any potential evidence.  Because our clients are already complying with their obligations to preserve the accounts and drives and no longer have access to any potential confidential or proprietary Cutera information that may be stored in those locations, and because of issues arising from the private personal information and data they contain, they will not be turning them over to Cutera.

Nevertheless, we are prepared to discuss protocols for further forensic examination and the subsequent mutual exchange of forensic information.  We look forward to receiving Cutera's forensic information so that we can assess Cutera's allegations that our clients deleted relevant evidence, including the timing of the alleged deletions.  At this time, we are aware that some personal information was deleted from Cutera laptops.  The information was deleted because of concerns about unlawful and inappropriate practices at Cutera of removing personal information from returned computers and sharing it with other Cutera employees, including photographs of the former employees' spouses.

Please advise as to your availability next week to discuss.

Thanks, Kathy

From: Rosales, Rico <rrosales@wsgr.com>
Sent: Thursday, February 13, 2020 3:47 PM
To: Katherine Huibonhoa <KHuibonhoa@chjllp.com>
Cc: Daniel Lassen <DLassen@chjllp.com>; Snyder, Meaghan <msnyder@wsgr.com>
Subject: RE: Cutera v Laber, et al.: Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information

1

Katherine. In my message below, I made clear that Cutera demands that your clients demanded the immediate production of storage devices, as well as access to all storage accounts used to store any information relating or referring to their employment at Cutera or Lutronic. I neglected to make clear that they return all such devices by 5:00 p.m. tomorrow, Friday, February 14, 2020. The devices can be returned to our Palo Alto offices.

**From:** Rosales, Rico
**Sent:** Thursday, February 13, 2020 1:48 PM
**To:** 'Katherine Huibonhoa'
**Cc:** Daniel Lassen; Snyder, Meaghan
**Subject:** Cutera v Laber, et al.: Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information

Katherine. I just left you a voice message. Our preliminary forensics analysis reveals that each of your clients (we are still waiting for results on Baker) accessed their Cutera computers before returning them and after Cutera advised each of them not to do so. To be clear, there is evidence establishing that each of your clients used external storage devices to copy and transfer information to those devices, and there is also significant evidence that your clients deleted relevant evidence, and also transferred of information to external cloud storage accounts. Cutera demands the immediate production of each external storage device used by your clients to access and/or store Cutera information, and similarly demands access to all cloud storage accounts used to store any information relating or referring to their employment at Cutera or Lutronic. Each of these devices and cloud accounts used by your clients contains evidence relevant to the ongoing litigation, and are subject to the prior non-destruction demand made on your clients on January 22, 2020. As the evidence is clear that your clients did not adhere to the original preservation demand, we wish to reiterate it here.

Whether or not your clients produce the storage devices (and provide access to the cloud accounts referenced) as demanded by Cutera, in light of the existing litigation between our respective clients, as well as Cutera's suit against Lutronic, your clients are hereby notified that under no circumstances should they destroy, delete, or otherwise discard any documents or information relating to Cutera, Lutronic, or Cutera's claims against your clients or Lutronic, including but not limited to all documents relating to: Cutera, any current or former Cutera employee or service provider (including those with whom Lutronic or any Lutronic representative has discussed Lutronic or employment with Lutronic), Cutera or Lutronic business information (whether confidential or not), and any communications with, or documents or presentations provided to, any potential or actual Lutronic employees or representatives. This preservation request applies no matter where such information resides, including any home computer(s), external storage devices, personal email accounts, or in cloud storage accounts. In particular, under no circumstances should your clients delete, destroy or alter the contents of any computer, other electronic device, or cloud storage account that may store or contain (or may have stored or contained documents potentially relevant to, or discoverable in, Cutera's arbitration proceeding against your clients or its lawsuit against Lutronic. Your clients' failure to abide by this notice may result in an additional claim for spoliation of evidence, an evidentiary inference or presumption of guilt, and a discovery sanction by a judge or arbitrator. Based on the information available to us at this juncture, Cutera will surely seek some remedy for your clients' brazen violation of their duties to preserve evidence.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

2

# EXHIBIT E

| | |
|---|---|
| **From:** | Rosales, Rico |
| **Sent:** | Friday, February 14, 2020 4:42 PM |
| **To:** | 'Katherine Huibonhoa' |
| **Cc:** | 'Daniel Lassen'; Snyder, Meaghan |
| **Subject:** | RE: Cutera v Laber, et al.: Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information |

Kathy. Our forensics expert, Lighthouse, has confirmed that after the date on which your clients were told not to access their Cutera computers, they did so. Mr. Laber, for example, (i) connected his Cutera computer to an external storage device after he was told not to destroy evidence; (ii) deleted thousands of files and folders, including chats, (iii) performed Google searches to educate himself how to destroy evidence, (iv) uploaded information to his cloud accounts, (v) accessed relevant information from his Gmail account. Mr. Yannocone also accessed his Cutera computer after he was told not to do so, connected an external storage device to his computer, transferred information to his storage device, and deleted certain files and folders from his computer, which information included Cutera business information. Ms. Kim, more than a week after she resigned from Cutera and was told to return and not access her computer, connected a two terabyte USB external device. Lighthouse believes she essentially copied her entire Cutera computer to the external storage device. In addition to permanently deleting information on her Cutera computer, Ms. Kim engaged in the exfiltration, i.e. removal, of data of at least 250 GB via use of the cloud, removable media, and email, such that the data removed is no longer on the Cutera-owned laptop.

For these and other reasons, it is imperative for your clients to turn over the external storage devices and other accounts to Cutera so that Lighthouse can *further* assess the damage of your client's action and the threat to its trade secrets posed by your clients' activities. If your clients will not turn over these devices to Wilson Sonsini, officers of the court, then we demand that your clients do the following:

- Provide Cutera an inventory log of the devices and accounts that you represent they have turned over to your forensics firm, as well as the date on which they returned each device and/or account;
- Provide Lighthouse with a copy of each forensic image of any device or account it has secured from your clients so that Lighthouse can perform its work with those images and determine what information was removed, deleted, altered or transferred;
- Provide a declaration from each of your clients, under penalty of perjury, stating that (i) the above-referenced log reflects each and every device or account to which they transferred any Cutera information since January 1, 2019; (ii) they no longer have the rights or ability to access the devices or accounts; (iii) that post-termination from Cutera they have not accessed the devices or accounts since transferring information to the devices or accounts; (iv) they have not deleted, altered, destroyed or transferred any of the information on the devices or accounts post-termination from Cutera, or if they cannot make that representation, identify what information has been deleted, altered, destroyed or transferred; and (v) they have not stored or retained any of the information stored on the devices or accounts in any other location, or on any other device, including their personal computers.

Again, in light of your clients' conduct to date, we believe that these requests are reasonable. Please let us know by tomorrow at 5:00 p.m. whether your clients agree to these terms. While we appreciate that we are asking for a response on a Saturday, your clients' conduct necessitates receiving these assurances immediately. Thank you.

**From:** Rosales, Rico
**Sent:** Friday, February 14, 2020 1:51 PM
**To:** 'Katherine Huibonhoa'
**Cc:** Daniel Lassen; Snyder, Meaghan
**Subject:** RE: Cutera v Laber, et al.: Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information

Thank you. I will advise Cutera that the devices will not be produced so that Cutera's experts can do their work. Your clients deleted far more than photos. They know that. We will be in touch.

**From:** Katherine Huibonhoa [mailto:KHuibonhoa@chjllp.com]
**Sent:** Friday, February 14, 2020 1:39 PM
**To:** Rosales, Rico
**Cc:** Daniel Lassen; Snyder, Meaghan
**Subject:** RE: Cutera v Laber, et al.: Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information

[External]
Hi Rico,

We have advised our clients of their obligations to preserve evidence. To that end, our forensic expert already took custody of relevant personal external hard drives and cloud storage accounts from our clients (i.e., our clients no longer have access), and is creating forensic images of the personal devices and accounts, consistent with your reminder that our clients preserve any potential evidence. Because our clients are already complying with their obligations to preserve the accounts and drives and no longer have access to any potential confidential or proprietary Cutera information that may be stored in those locations, and because of issues arising from the private personal information and data they contain, they will not be turning them over to Cutera.

Nevertheless, we are prepared to discuss protocols for further forensic examination and the subsequent mutual exchange of forensic information. We look forward to receiving Cutera's forensic information so that we can assess Cutera's allegations that our clients deleted relevant evidence, including the timing of the alleged deletions. At this time, we are aware that some personal information was deleted from Cutera laptops. The information was deleted because of concerns about unlawful and inappropriate practices at Cutera of removing personal information from returned computers and sharing it with other Cutera employees, including photographs of the former employees' spouses.

Please advise as to your availability next week to discuss.

Thanks, Kathy

**From:** Rosales, Rico <rrosales@wsgr.com>
**Sent:** Thursday, February 13, 2020 3:47 PM
**To:** Katherine Huibonhoa <KHuibonhoa@chjllp.com>

2

Katherine. In my message below, I made clear that Cutera demands that your clients demanded the immediate production of storage devices, as well as access to all storage accounts used to store any information relating or referring to their employment at Cutera or Lutronic. I neglected to make clear that they return all such devices by 5:00 p.m. tomorrow, Friday, February 14, 2020. The devices can be returned to our Palo Alto offices.

**From:** Rosales, Rico
**Sent:** Thursday, February 13, 2020 1:48 PM
**To:** 'Katherine Huibonhoa'
**Cc:** Daniel Lassen; Snyder, Meaghan
**Subject:** Cutera v Laber, et al.: Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information

Katherine. I just left you a voice message. Our preliminary forensics analysis reveals that each of your clients (we are still waiting for results on Baker) accessed their Cutera computers before returning them and after Cutera advised each of them not to do so. To be clear, there is evidence establishing that each of your clients used external storage devices to copy and transfer information to those devices, and there is also significant evidence that your clients deleted relevant evidence, and also transferred of information to external cloud storage accounts. Cutera demands the immediate production of each external storage device used by your clients to access and/or store Cutera information, and similarly demands access to all cloud storage accounts used to store any information relating or referring to their employment at Cutera or Lutronic. Each of these devices and cloud accounts used by your clients contains evidence relevant to the ongoing litigation, and are subject to the prior non-destruction demand made on your clients on January 22, 2020. As the evidence is clear that your clients did not adhere to the original preservation demand, we wish to reiterate it here.

Whether or not your clients produce the storage devices (and provide access to the cloud accounts referenced) as demanded by Cutera, in light of the existing litigation between our respective clients, as well as Cutera's suit against Lutronic, your clients are hereby notified that under no circumstances should they destroy, delete, or otherwise discard any documents or information relating to Cutera, Lutronic, or Cutera's claims against your clients or Lutronic, including but not limited to all documents relating to: Cutera, any current or former Cutera employee or service provider (including those with whom Lutronic or any Lutronic representative has discussed Lutronic or employment with Lutronic), Cutera or Lutronic business information (whether confidential or not), and any communications with, or documents or presentations provided to, any potential or actual Lutronic employees or representatives. This preservation request applies no matter where such information resides, including any home computer(s), external storage devices, personal email accounts, or in cloud storage accounts. In particular, under no circumstances should your clients delete, destroy or alter the contents of any computer, other electronic device, or cloud storage account that may store or contain (or may have stored or contained documents potentially relevant to, or discoverable in, Cutera's arbitration proceeding against your clients or its lawsuit against Lutronic. Your clients' failure to abide by this notice may result in an additional claim for spoliation of evidence, an evidentiary inference or presumption of guilt, and a discovery sanction by a judge or arbitrator. Based on the information available to us at this juncture, Cutera will surely seek some remedy for your clients' brazen violation of their duties to preserve evidence.

This email and any attachments thereto may contain private, confidential, and privileged material for the sole use of the intended recipient. Any review, copying, or distribution of this email (or any attachments thereto) by others is strictly prohibited. If you are not the intended recipient, please contact the sender immediately and permanently delete the original and any copies of this email and any attachments thereto.

3

# EXHIBIT F

# CURLEY, HURTGEN & JOHNSRUD LLP

### COUNSELORS AT LAW
**4400 BOHANNON DRIVE, Suite 230**
**MENLO PARK, CA 94025**

Katherine Huibonhoa
650.600.5312
khuibonhoa@chjllp.com

**www.chjllp.com**

Telephone: 650.600.5300
Facsimile: 650.899.1648

February 18, 2020

**VIA ELECTRONIC MAIL [rrosales@wsgr.com]**

Rico Rosales, Esq.
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, CA 94304

Re:     *Cutera Inc. v. Larry Laber, John Yannacone, Jon Baker*
        JAMS Ref. No. 1110025250

Dear Rico:

This letter follows up on our emails and telephone conference regarding your February 13, 2020 "Demand for Production of All External Storage Devices and Access to Cloud Storage Accounts Used to Store Cutera Information" in the above-referenced matter directed to our clients, Mssrs. Laber, Yannacone, and Baker, as well as Ms. Jina Kim, who we represent but who is not a party to the above-referenced matter (collectively, the "Individuals").

In particular, your February 14, 2020 email (sent at 4:42 p.m.) demanded in relevant part:

> For these and other reasons, it is imperative for your clients to turn over the external storage devices and other accounts to Cutera so that Lighthouse can further assess the damage of your client's action and the threat to its trade secrets posed by your clients' activities. If your clients will not turn over these devices to Wilson Sonsini, officers of the court, then we demand that your clients do the following:
>
> • Provide Cutera an inventory log of the devices and accounts that you represent they have turned over to your forensics firm, as well as the date on which they returned each device and/or account;
>
> • Provide Lighthouse with a copy of each forensic image of any device or account it has secured from your clients so that Lighthouse can perform its work with those images and determine what information was removed, deleted, altered or transferred;

- Provide a declaration from each of your clients, under penalty of perjury, stating that (i) the above-referenced log reflects each and every device or account to which they transferred any Cutera information since January 1, 2019; (ii) they no longer have the rights or ability to access the devices or accounts; (iii) that post-termination from Cutera they have not accessed the devices or accounts since transferring information to the devices or accounts; (iv) they have not deleted, altered, destroyed or transferred any of the information on the devices or accounts post-termination from Cutera, or if they cannot make that representation, identify what information has been deleted, altered, destroyed or transferred; and (v) they have not stored or retained any of the information stored on the devices or accounts in any other location, or on any other device, including their personal computers.

As we have advised you, the Individuals take very seriously the matter of evidence preservation. However, for reasons we have shared with you in our communications and which we recap below, the Individuals cannot accede to Cutera's unilateral demands at this time, but remain willing to negotiate mutually-agreeable protocols for further forensic examination and the mutual exchange of forensic information, consistent with their and Lutronic's discovery obligations.

The Individuals have taken substantial, proactive steps to preserve relevant evidence. The Individuals have identified external storage devices and cloud storage accounts that may contain information related to their Cutera employment to our forensic expert, Smith DFI, Inc. ("Smith DFI"). Smith DFI has taken custody of all of the identified external storage devices, and has restricted access to all of the identified cloud storage accounts, including iCloud, personal email, and Dropbox accounts. The custody transfer process for these external storage devices and cloud storage accounts was undertaken for Mr. Laber on February 7, 2020; for Ms. Kim on February 10, 2020; for Mr. Baker on February 12, 2020; and for Mr. Yannacone on February 12, 2020 (collectively, the "Custody Dates"). To be clear, the scope of these preservation efforts has been very broad. The Individuals have relinquished a great deal of personal information and are restricted from accessing personal accounts. The Individuals also turned over to Smith DFI on the Custody Dates the laptop computers that they had been using since their separation from Cutera, and have purchased new laptops.

As part of this process, Ms. Kim has notified us that she is no longer in possession of an external storage device that has a file with information related to her Cutera employment, as well as significant personal information. Ms. Kim inadvertently lost this drive on a flight on or about January 31, 2020. Ms. Kim reported the device lost to the airline, but the airline has not yet located it. The lost drive was a backup drive that is identical in content to the external storage device that Ms. Kim surrendered to Smith DFI and whose contents have been preserved.

You have represented to us that your forensic analyses of the Cutera laptops the Individuals returned reveals that they accessed, transferred, and/or deleted Cutera information. We asked you to provide additional detail regarding these analyses and to identify the external storage devices and/or accounts you believe were involved, but you refused to do so and made clear to us that Cutera's demands are one-way. We shared with you that our priority has been to secure relevant sources and that Smith DFI has not yet completed its forensic analysis. We reiterate that

we are prepared to establish mutually-agreeable protocols for further forensic examination and the subsequent mutual exchange of forensic information.

Given that the identified external storage devices and cloud storage accounts have been secured by Smith DFI, we do not believe there is an immediate risk of irreparable harm or other exigent circumstances that would justify Cutera's demand. What may (or may not) have occurred prior to the Custody Dates, and whether such conduct was (or was not) unlawful, are all issues for this litigation. Cutera's current demand for what amounts to early one-way discovery is improper and unreasonable, especially when weighed against the Individuals' privacy interests and the exceedingly broad scope of the requested declarations (seeking representations about "Cutera information" that go well beyond any trade secret, while Cutera refuses to identify with any particularity what information it believes has been compromised and even what trade secrets are at-issue in this litigation).

In sum, in light of the significant steps the Individuals have taken to secure relevant evidence, Cutera's refusal to identify the external storage devices and/or storage accounts it believes were involved, and our invitation to work together on subsequent forensic examinations, we believe that Cutera has no basis for seeking any sort of emergency injunctive relief and that its unilateral demands are not reasonable. Nevertheless, should Cutera feel it necessary to seek provisional relief, it should do so through JAMS as Cutera's Employee Proprietary Information And Assignment Of Inventions Agreement requires.[1]

Very truly yours,

CURLEY, HURTGEN & JOHNSRUD LLP

Katherine Huibonhoa

cc:    Meaghan Snyder, Esq. (msnyder@wsgr.com)
       Daniel Lassen, Esq. (dlassen@wsgr.com)

---

[1] Note that Ms. Kim did not sign Cutera's Employee Proprietary Information And Assignment Of Inventions Agreement or Employee Proprietary Information Agreement.