ULRICO S. ROSALES, State Bar No. 139809
Email: rrosales@wsgr.com
MEAGHAN SNYDER, State Bar No. 279392
Email: msnyder@wsgr.com
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Plaintiff
CUTERA, INC.

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CUTERA, INC., | CASE NO.: 2:20-CV-00235-KJM-DB |
| Plaintiff, | **DECLARATION OF SHELBY ECKERMAN IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUCTION AND FOR ORDER RE: PRESERVATION OF EVIDENCE** |
| v. | |
| LUTRONIC AESTHETICS, INC., and Does 1-20. | |
| Defendants. | |
| | Before: The Hon. Kimberly J. Mueller Magistrate Judge Deborah Barnes |
| | Complaint Filed: January 31, 2020 Jury Trial Demanded |

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-1-

Error! Unknown document property name.

I, Shelby Eckerman, hereby declare as follows:

1.      I am the Vice President of Global Commercial Operations for Cutera, Inc. ("Cutera" or "the Company").  I have held this position since October 7, 2019.  My job responsibilities generally consist of overseeing and managing the operations of Cutera's global sales organization, including managing all aspects of sales-related operations both directly and indirectly, for all of the individual employees who serve in this organization.  I have personal knowledge of the facts set forth in this declaration and, if called to do so, I could and would testify competently to them.

2.      Cutera is a medical device company that is engaged in the design, development, manufacture, marketing and servicing of laser and other energy-based aesthetics systems for practitioners across the world.

3.      On January 17, 2020, four Cutera employees resigned from Cutera, suddenly and without notice.  The four former Cutera employees are: Larry Laber ("Laber"), Jonathan Baker ("Baker"), John Yannocone ("Yannocone"), and Jina Kim ("Kim") (together the "Former Cutera Employees").

4.      At the time he resigned from Cutera, Laber was the Executive Vice President of Sales for Cutera, one of Cutera's highest ranking employees.  He worked for Cutera for approximately 5 years, 4 months, from September 11, 2014 to January 17, 2020.  According to his own LinkedIn profile, Laber "manage[d] a team of 70 in NA Sales & Marketing with 10 direct reports... I built a Regional Sales Management Team in North America, hired 40+ Plus Area Sales Managers, and built a Territory Sales Program."  In other words, as the Cutera executive responsible for Cutera's sales efforts in North America, by far Cutera's largest market, Laber not only had access to, but he was charged with developing Cutera's sales strategies, including territory alignment, product list pricing, sales promotions, discounts and circumstances under which discounts are approved, and all other commercial aspects of Cutera's business. Along with other Cutera business leaders, Laber also helped develop Cutera's pricing structure,

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO.  2:20-CV-00235-KJM-DB

-2-

Error! Unknown document property name.

sales compensation plan, and marketing strategy. At the time of his departure from Cutera, Laber's 2019 gross pay was $1,006,761.88.

5. At the time he resigned from Cutera, Yannocone was the Northeast Regional Sales Manager for Cutera. He worked for Cutera for approximately 7.5 years, from July 2012 to January 17, 2020. His job responsibilities included meeting or exceeding the region's revenue targets, driving the success and growth of the region by managing the team to generate leads, recruit, hire and train new Area Sales Managers (ASMs) and Territory Managers (TMs), assist ASMs in closing deals, thorough knowledge of customer base including physicians and hospital based personnel, and management of sales forecasting for the region. At the time of his departure from Cutera, Yannocone's 2019 gross pay was $615,620.20.

6. At the time she resigned from Cutera, Kim was the Director, Professional Programs and Outreach for Cutera. She worked for Cutera almost 6 years, from March 2014 to January 17, 2020. According to her own LinkedIn profile, Kim's job responsibilities included developing and running Cutera's annual professional programs, sales planning and management; sales force education of professional programs; managing sales lead generation for Cutera' sales efforts; developing and implementing an analytic system for success/fail metrics of Cutera's sales professional programs; and managing and developing Cutera's internal and external agency team. At the time of her departure from Cutera, Kim's 2019 gross pay was $222,817.04.

7. At the time he resigned from Cutera, Baker was the Eastern Sales Director – North America. He worked for Cutera almost 14 years, from January 2006 to January 17, 2020. His job responsibilities included meeting or exceeding Division's revenue targets, driving the success and growth of the Division by managing the team to generate leads, recruiting, hiring and training new Area Sales Managers and Territory Managers, assist in closing deals, thorough knowledge of customer base including physicians and hospital-based personnel, and management of sales forecasting for the Division. At the time of his departure from Cutera, Baker's 2019 gross pay was $398,680.59.

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUNCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-3-

Error! Unknown document property name.

8.     Defendant Lutronic Aesthetics, Inc. ("Lutronic"), which now employs the Former Cutera Employees, is also a medical device company and also develops and manufactures aesthetic and medical laser systems. Lutronic is a Cutera competitor. Every Cutera customer or potential customer is almost by definition a potential Lutronic customer because the customer has a need for products that both companies sell. For virtually every product Cutera sells into each vertical market, Lutronic has a competitive product.

9.     As stated, Cutera develops products and treatments for the medical aesthetics industry. It has invested substantial time, money and resources identifying, qualifying, and validating promising sales leads, designing specifications for prospective customers, formulating technical solutions to address its customers' needs, and developing and marketing its technology. As a result, Cutera is one of the leading manufacturers and distributors of medical aesthetic devices in the world. Much of this success is related to our research and analysis of the market, resulting in significant amounts of trade-secret and proprietary information of incalculable value. This information is invaluable to the success of Cutera's sales department. Cutera also invests substantial sums of money in the recruiting, hiring, training, and retaining of its employees, including its sales personnel. The marketplace for trained and experienced sales people is very competitive, and Cutera therefore invests significant sums to attract and retain the best sales talent. Cutera enjoyed valuable and profitable contractual relationships and prospective contractual relationships with each of the Former Cutera Employees, including the sales personnel that Laber and Lutronic caused to terminate their relationships with Cutera. Laber was fully aware that Cutera expected to enjoy future business relationships with the employees in question. Said continued business relationships represent a probable future economic benefit or advantage to Cutera.

10.     The Trade Secret Information Cutera has developed and possesses includes, but is not limited to:

- Cutera's confidential customer contract information, including current and prospective customer names and contact information compiled through internal

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

research, sales lead and call information and records, confidential information related to undisclosed pricing, historical quote history, discount information, payment terms offered to customers or potential customers, reasons for changes to quotes, analyses of customer demands, preferences, feedback and needs, previous discussions with customers, regarding prior and potential new projects, and proposed technical engineering specification stored on Cutera computers, servers, information related to product reliability and warranty information, and Cutera's salesforce.com database;

- Cutera employee information not available to the public or to its competitors, including the names, addresses, telephone numbers, qualifications, experience, sales track record, incentive compensation, compensation expectation, and other valuable information pertaining to these employees;

- Cutera's confidential sales reports containing detailed customer pricing information for specific customers, customer discounting information, and ordering information for Cutera products;

- Cutera's confidential market analysis and forecasting reports containing proprietary analyses of specific market trends, market pricing information trends, and target markets for selling Cutera products based on market conditions and financial analysis;

- Cutera business analysis reports containing multi-year strategic plans, marketing plans, and projections for targeting and expansion of specific markets for selling Cutera products;

- Cutera price and cost information, including current manufacturing and vendor costs, labor costs, overhead, profit margins, employee salaries, employee bonus and/or commissions information; and

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-5-

Error! Unknown document property name.

- Cutera product information, including product specifications and features, development plans, including for new products, new product launch dates and schedules, pipelines, product reliability information, and roadmaps.

11. Cutera's Trade Secret Information is not readily ascertainable or generally known to those who can obtain economic value from their disclosure or use (including Cutera's competitors or others in the industry). The disclosure of this Trade Secret Information to Lutronic or any other competitor would permit that competitor to more effectively compete without having to incur the significant time, effort and expense incurred by Cutera, thus providing a significant market advantage for the Cutera competitor. As such, Cutera derives independent economic value from the fact that its trade secrets are not generally known.

12. Cutera values and carefully safeguards its proprietary and trade secret information from disclosure to the general public and its competitors. Indeed, Cutera has expended much effort to protect the secrecy of its trade secret information. Cutera's efforts include the following: (1) having all new employees sign a confidentiality agreement in which they contractually promise to maintain Cutera's trade secret information; (2) requiring employees upon terminating their employment with Cutera, to deliver to Cutera (and not keep in their possession, recreate or deliver to anyone else) any and all Cutera documents and property, including Cutera's trade secret information; (3) developing written and enforced Company policies regarding confidentiality; (4) receiving annual training to re-emphasize the importance of confidentiality; (5) restricting physical access to Company facilities; (6) restricting access to Company electronic information and data, including use of periodically changing passwords; (7) implementing a document destruction policy; (8) reminding employees, at the time of their termination of employment, of their contractual obligations to Cutera and ensuring that terminating employees return all Company property, information, and materials, including any and all trade secret information; and (9) taking all reasonable and necessary steps to legally safeguard Cutera's rights to its trade secret information. Cutera must maintain the strict confidentiality of its trade secrets to preserve its competitive advantage in the marketplace.

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-6-

Error! Unknown document property name.

13.     In addition, Cutera's Code of Business Conduct & Ethics includes a section specifically addresses "Protection of Intellectual Property & Confidential Information," and makes clear that "[e]mployees, officers and directors must maintain the confidentiality of all information so entrusted to them, except when disclosure is authorized or legally mandated." The Code also addresses protecting passwords, mobile security, and the acceptable usage of Cutera systems (including prohibiting the "unauthorized transmission of company data"). Cutera also provides employee training on the subject of protecting its Trade Secret Information, and also addresses the matter in its employee handbook, including in the section involving "Conflicts of Interest." The handbook also advises Cutera employees that "[a]ccess to confidential information should be on a 'need-to-know' basis." A true and correct copy of the relevant provisions of Cutera's code of conduct and employee handbook are attached hereto as **Exhibits A and B**.

14.     In addition, Cutera requires its employees to sign confidentiality agreements. As a condition of employment with Cutera, each of the Former Cutera Employees signed an agreement pursuant to which they agreed that (i) during and after their employment they would protect, hold in strict confidence, and not use (except for Cutera's benefit) Cutera's Trade Secret Information, and (ii) upon terminating their employment with Cutera, they would deliver to Cutera (and would not keep in their possession, recreate or deliver to anyone else) any and all Cutera devices, records, data, notes, reports, proposals, lists, correspondence, materials, equipment, other documents and property (including Cutera's Trade Secret Information), or reproductions of any aforementioned items developed by the employee pursuant to his or her employment with Cutera or otherwise belonging to Cutera. Messrs. Laber, Baker and Yannocone also agreed that (iii) during the term of their employment with Cutera they would not engage in any other employment, occupation, consulting or other business activity directly related to the business in which Cutera was involved, and would not engage in any other activities that conflicted with the employee's obligations to Cutera; (iv) they would sign and deliver to Cutera a "Termination Certification" confirming certain obligations to Cutera; and (v)

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUNCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO.  2:20-CV-00235-KJM-DB

Error! Unknown document property name.

for a period of 12 months, they would not use Cutera trade secrets to solicit Cutera's employees to leave their Cutera employment.  True and correct copies of the Confidentiality Agreements signed by Laber, Yannocone, and Baker are attached hereto as **Exhibits C, D & E**, respectively.  Kim signed a similar confidentiality agreement, where she too agreed to protect and keep confidential Cutera's Trade Secret Information, and also agreed to return to Cutera its devices, equipment, documents and property. A true and correct copy of Kim's Confidentiality Agreement is attached hereto as **Exhibit F**.

15.      Cutera is headquartered in California and its main computer servers and files are located in California.  Cutera stores confidential information and trade secrets on these computer servers.  Cutera also maintains a database to manage sales contacts and data on www.salesforce.com.  This database includes information regarding potential customer and current customer account and contact information including names, emails, addresses and phone numbers. It also includes physician cell phone numbers which are extremely valuable for marketing campaigns and end-of-year promotions.  In addition to contact information, the database contains account contact history related to service and system deals and pricing.  This information is highly confidential and valuable to any competitor due to the wealth of information contained relating to accounts and historical deals, including pricing.  The information that Cutera keeps on this database is confidential, proprietary, valuable, and key to the success of Cutera and its sales employees.  In my experience, virtually every company closely guards the information contained in its www.salesforce.com database.

16.      Because of their positions and roles with Cutera, Laber, Yannocone, and Baker regularly accessed this database as a part of their employment duties. Moreover, in the ordinary course of performing their job responsibilities, each of the Former Cutera Employees had regular and extensive access to Cutera's confidential and proprietary trade secrets that included not only technical information related to Cutera's medical aesthetic products, but non-public marketing and sales information, product roadmap and launch information, pricing information, and confidential information relating to Cutera's customers and sales employees.  Each had

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO.  2:20-CV-00235-KJM-DB

Error! Unknown document property name.

information relating to how Cutera divided up its sales territories for optimal sales results, how it compensated its sales personnel and managers, as well as Cutera's incentive compensation plans. Cutera provided the Former Cutera Employees access to this Cutera Trade Secret Information expressly for use in the performance of their respective jobs in the Cutera sales organization. If the Former Cutera Employees or any competing business used the trade secret information, that person or competitor would be able to provide himself/itself with an undeserved and unearned advantage. For example, if a competitor received Cutera's confidential pricing information, it could under-cut Cutera on pricing. If it combined this knowledge with confidential information on the specific companies that intended to purchase products in a specific time period, the competitor could unfairly accelerate its own sales progress, avoid substantial lead generation efforts, and under-cut Cutera on pricing in the sale. Similarly, if a competitor became aware of potential sales leads without actually prospecting and working to develop those leads, it would put Cutera at a distinct disadvantage and it would likewise create a clear advantage for the competitor. Pricing information is extremely sensitive and valuable, and the primary work of all sales personnel is to identify which customers are likely to purchase products at any given time, making the knowledge of impending purchase decisions highly valuable and expensive to acquire. It also makes the use of this information by competitors extremely damaging.

17. On January 22, 2020, Cutera, through its outside counsel, Thompson & Knight LLP, sent Laber a letter requesting that he return all Cutera equipment and information, including his laptop. On January 24, 2020, said counsel sent a similar letter to each of the other three Former Cutera Employees. Said counsel further instructed each Former Cutera Employee "not to access or attempt to alter in any way the contents of that computer and to immediately return such equipment (and any other Company documents or property) to the Company." A true and correct copy of the letters sent to the Former Cutera Employees are attached hereto as **Exhibit G**.

18. Lighthouse Global, Inc. ("Lighthouse"), an ediscovery service has conducted a preliminary forensic analysis of Laber's computer. As set forth in more detail in the declaration

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

of Kevin Clarke from Lighthouse, Cutera has learned that on January 27, 2020, days after Laber received the notice from counsel not to access or alter information, Laber not only disregarded the demand and accessed his Cutera computer, he also connected an external storage device to the computer and transferred a number of files and documents. These activities not only constituted total disregard of the instructions provided, but an express breach of Cutera's Confidentiality Agreement. Cutera has also learned that Laber has sought to destroy evidence and hide his tracks by deleting most of the data that resided on his laptop—information he was obligated to preserve and not destroy. Laber has deleted and destroyed local versions of ichat messages, including messages that he had sent to the other Former Cutera Employees. Laber also evidently deleted a document entitled "Users/larrylaber/.Trash/Laser Opportunity deck 1125 DRAFT 2.pptx." This appears to be a file that contains either product or customer expansion opportunities for Cutera's system business as of November 25, 2019 (after Laber received his job offer from Lutronic and before he resigned). This could put Cutera's future product launches at risk and expose its pricing and cost of goods information to the competition. As a result of his deletion activities, Cutera is now unable to see what Laber had done with Cutera's confidential information that was stored on *Cutera's computer*.

19. Based on the forensics work to date, it appears that Laber has stolen from Cutera virtually any information that might be helpful to Laber and Lutronic in unfairly competing with Cutera, including pricing information, sales demos, budgets, customer NDA forms, product financial models, sales plans, sales and revenue projections, and much more. Lighthouse determined that Laber uploaded a number of Cutera documents to his iCloud account, including the following: (1) "NA ASM_TM_2019_Plan.pdf"; (2) "Copy of Dec Level 5 Deals 1.13"; (3) "Q3 2019 Final 4"; and (4) "Cutera 2015 Product Pricing Matrix 9 19 14." The mere titles of these documents, and others identified by Lighthouse reveals the proprietary nature of the information they contain. They are demonstrably not documents and information available in the public domain. For example, the first document ("NA ASM_TM_2019_Plan.pdf") is the 2019 Compensation plan for an ASM (Area Sales Manager) and TM (Territory Manager). This file

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUNCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-10-

Error! Unknown document property name.

contains the company's most recent fiscal year's compensation plan for its sales managers. Such information is not in the public domain and Cutera, of course, does not want its competition to understand how it compensates, incentivizes and retains its valuable sales talent. Lutronic's access to this information puts Cutera at a disadvantage, as Lutronic can now model its future compensation plans off Cutera's plans to attract talent away from Cutera. Cutera believes that Laber's illicit conduct amply demonstrates that he has used, and continues to use this non-public information to recruit away key Cutera employees by compensating them at a rate higher than Cutera pays its employees. To date, in addition to the Former Cutera Employees, Laber and Lutronic have solicited and hired 9 other Cutera sales employees to leave Cutera and join Lutronic. The second document ("Copy of Dec Level 5 Deals 1.13") contains highly confidential and valuable sales information. A document reflecting Cutera's customers and deal information is information that Cutera closely guards and does not want its competition to possess. Level 5 deals are deals that are below Cutera's price matrix and reflect the lowest level pricing the company would allow. These deals require EVP Sales and President approval. The third document ("Q3 2019 Final 4") also contains highly sensitive and proprietary business and financial information, as it appears to be a third quarter financial update. The document likely provides information on Cutera's third quarter (right before Laber left and the last complete quarter's worth of data) financial performance including budget, forecasts, regional performance, system performance, consumable performance, etc. The fourth document ("Cutera 2015 Product Pricing Matrix 9 19 14") is a document appears to contain the Cutera price matrix from 2015 with competitive pricing information that can be used by competitors to undercut Cutera's prices. This document could be used to demonstrate how the Company has changed pricing since 2015. Prior to 2019, the pricing matrix also included commission rates.

20. In addition to these Laber iCloud (Archive) folders, there are also files with an .icloud extension. Examples of files associated with the user's iCloud account include

- "Copy of sales demo June w pricing.xlsx.icloud." This document appears to show demo pricing. Demo pricing is particularly sensitive as demo units are

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUNCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

Error! Unknown document property name.

those that are used by Cutera sales representatives to demo its devices. As the devices become more used, they are often sold at a discounted price. This discount is driven by a number of factors. Laber's access to this information as to how and why Cutera set pricing on demos puts Cutera at a disadvantage (and Lutronic at an advantage) on competitive deals. Any information containing pricing in the hands of the competition would put Cutera's ability to be competitive in jeopardy. The competition would always undercut Cutera on pricing, especially on known competitive deals.

- "Budget 2020 $[1] v1-22-20.xlsc.icloud." This document appears to show Cutera's 2020 budget information. The details of Cutera's 2020 budget are extremely sensitive as they address sales and marketing spend, research and development spend, and by proxy, Cutera's corporate objectives. If Lutronic had access to Cutera's 2020 operating expense budget, Lutronic would have knowledge of the financial impact of running the Cutera organization in 2020, including amounts spent on travel, benefits, demo expense, sales meetings, etc. Cutera's focus on our consumable business is critical to its future success.

- "Cutera NDA/. Cutera Customer NDA.docx.icloud." This document appears to be a customer non-disclosure agreement. This agreement is confidential on its face and the parties are required on its terms to maintain such confidentiality. Laber's possession of this document not only puts the Company in breach of the agreement likely, but it also puts Cutera at a disadvantage because the agreement describes the confidential information and the nature of the information. Having a copy of the Cutera NDA would allow the competition to establish relationships with its customers that may be outside of our NDA.

---

[1] I have not included the budget number here as that figure is highly confidential.

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUNCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-12-

Error! Unknown document property name.

- "Secret RF Image/.NA DCMS_2017_Plan_FINAL_3.31.17.pdf.icloud." This document appears to be the 2017 plan for North America. It is financial in nature and likely provides revenue, cost of goods, and operating expense spending. In the hands of the competition, this information would provide details on how Cutera scaled the business between 2017 and today by leveraging this file and the 2020 plan that Laber uploaded to the cloud. Laber's access to this information allows him to structure Lutronic's competitive business in an advantageous way.

- "TS3D Project/.Trusculpt financial model Marina.xlsx.icloud." This document likely provides pricing, costs of goods, marketing spend, and commission information for one of Cutera's new products. Access to the document would allow the competition to understand Cutera's cost structure and marketing investment spend on new products and would put Cutera's sales force at a disadvantage if the competition were able to find a way to make the product for less and sell that product for a lower price.

21. As stated above, Cutera believes the above-referenced customer and client information and employee information is trade secret. It is confidential and extremely valuable, and Cutera takes efforts to keep the information confidential. Based on my industry experience, it is my belief that Lutronic and every other Cutera competitor would similarly view this information as confidential and proprietary and would not want Cutera to receive the information. If Laber and Lutronic are able to use this and similar customer and employee information to compete against Cutera, it would cause Cutera grave and irreparable harm for the reasons I have explained above.

22. Lighthouse also conducted a forensic search of John Yannocone's computer. Yannocone connected an external drive to his computer on January 7, 2020, at which point he copied approximately 20 folders (which Cutera believes contained numerous files) from his laptop to the external drive. The documents that Yannocone transferred to the external drive just days before his abrupt resignation from Cutera included documents with the following titles:

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-13-

*Error! Unknown document property name.*

"2019 Price List & Commissions", "2019 rep info", "Coolsculpting accounts", "marketing", "pitches", "presentations", "region business plans", "top leads."

23. Yannocone also connected an external USB flash drive to the laptop on January 25, 2020. Various files on the laptop were accessed minutes before the flash drive was connected to the laptop, including files entitled: file:///C:/Users/jyannocone/Desktop/NA ASM_2015_Plan_FINAL_2.25.pdf  "file:///C:/Users/jyannocone/Desktop/NA ASM_TM_2017_Plan_FINAL_TEAM_NY_4.27.17.pdf"; and file:///C:/Users/jyannocone/Desktop/NA_ASM_TM_2016_Plan_Vittal_Yannocone_2.24.26.pdf. For the reasons I have provided as to the documents that Laber has stolen, the documents that Yannocone has taken are similarly confidential, proprietary, and valuable to Cutera's business and sales efforts.  They should not have been taken and certainly should not be used to benefit Lutronic's business to the detriment of Cutera.

24. Yannocone also attempted to delete documents, including Cutera information from the laptop on January 27, 2020, including documents entitled "Cutera Lasers Year End Discount" and "Greenway pitch."   Despite efforts to delete these documents, the evidence suggests they remain in Yannocone's possession, and therefore Lutronic's possession.

25. Again, because of Yannocone's deletion activities and his failure to return the external USB devices to Cutera, Cutera is unable to determine the full extent of Yannocone's wrongdoing.

26. Lighthouse also conducted a forensic search of Jina Kim's computer.  Based on the analysis, Cutera knows that an external device was connected to Kim's computer on January 27, 2020, ten days after her last date of employment with Cutera.  It appears that Kim copied her entire computer onto this two terabyte USB external device. In addition to permanently deleting information on her Cutera computer, she also engaged in the exfiltration, i.e. removal, of data of at least 250 GB via use of the cloud, removable media, and email, such that the data removed is no longer on the Cutera-owned laptop.  These actions expressly violate her Confidentiality Agreement.  There is evidence that a folder entitled "E:\cutera\Jina PC\outlook_archive" was

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO.  2:20-CV-00235-KJM-DB

-14-

Error! Unknown document property name.

exfiltrated via an external media device, suggesting that all or substantially all of the contents of Kim's Cutera email archive was copied to an external device. There is also evidence that files were uploaded to a personal Dropbox account on January 17, 2020, the day Kim resigned abruptly, including files that contain Cutera information, such as "C:/Users/jkim/Dropbox (Personal)/2020 Cutera NSM Short-v3.m4v", "C:/Users/jkim/Dropbox (Personal)/cutera – marketing", "C:/Users/jkim/Dropbox (Personal)/cutera/NSM pics 2020". There is also evidence of a mass deletion of files from the laptop on January 28, 2020. Again, as a result of Kim's brazen behavior, Cutera is not in a position to determine the extent of her wrongdoing, or the extent of the threat to its trade secret information. Notwithstanding, the sales and marketing information apparently contained in these documents is confidential, proprietary, and valuable to Cutera's sales and marketing efforts and should not be in the possession of its competitors or employees of competitors.

27.     Lighthouse also conducted a forensic search of Baker's computer. Though the search is still in progress, it already has revealed that several external media devices have been connected to the laptop, the most recent being a one TB LaCie external device last connected on January 19, 2020, two days after Baker resigned abruptly. There is evidence of several files and folders created on the LaCie external device on January 17, 2020 that appear to be Cutera related, including "D:\Competition", "D:\Pricing", "D:\Sales Bible", "D:\Trusculpt", "D:\WORKSHOP", and "D:\XEO." Further, there is evidence of deletion activity as recently as January 18, 2020. This activity includes deletion of "C:\Users\jbaker\Desktop\Secret", "C:\Users\jbaker\Desktop\Trusculpt", "C:\Users\jbaker\Desktop\Advanced Sales.pptx" and "C:\Users\jbaker\Desktop\outstanding deals.xlsx." Again, the mere titles of these documents (which Cutera does not have because Baker stole them and then deleted them so that he could hide his tracks) establish that the information they contain is proprietary to Cutera and Baker had no business removing them and using them for the benefit of Lutronic.

28.     The information that appears to have been stolen by Laber, Yannocone, Kim, and Baker undoubtedly contains information about important customers, market plans, business

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUNCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-15-

Error! Unknown document property name.

plans, cost analysis, employee personnel and compensation information, and other vital information.  As such, it is incredibly valuable to individual sales persons and our corporate competitors alike.  These files contain the "keys" to much of Cutera's success and could be used by the Former Cutera Employees and Lutronic to devastate Cutera's ability to compete in the global marketplace.  This information is valuable because it provides competitive advantage in selecting which markets to pursue, selecting the best market strategies, knowing Cutera's strengths to mitigate and weaknesses to exploit in attacking markets, and competing to win new customer projects.  It is also information that is critical to Cutera's employee hiring, compensation, and retention efforts.  Because Lutronic's commercial sales group was much less mature than Cutera's, the information also gives Lutronic tools, templates, and knowledge to gain large commercial sales expertise faster than they would without it.  Cutera discovered the theft relatively early and there may still be time to prevent further damage if the Former Cutera Employees are prevented from misappropriating Cutera's trade secrets, and ordered to return all the stolen files and not to use, or disclose to third parties, the contents of the stolen files.

29.     As noted, since the departure of Laber, Yannocone, Baker, and Kim from Cutera, an additional nine sales employees have resigned, without notice, from Cutera to join Lutronic.  Most of these employees reported through either Baker or Yannocone.  We believe that the additional employees to leave Cutera and join Lutronic include the following:

- James McCaffrey, who resigned on January 25, 2020
- Lauren D'Olympio, who resigned on Janaury 25, 2020
- Mike DeMasi, who resigned on January 26, 2020
- Jason Giamattei, who resigned on January 26, 2020
- Jim Bluedorn, who resigned on February 1, 2020
- David Khodayar, who resigned on February 11, 2020
- Matt Farris, who resigned on February 11, 2020
- Alex Crowe, who resigned on February 17, 2020
- Alexis Osting, who resigned on February 20, 2020

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO.  2:20-CV-00235-KJM-DB

Error! Unknown document property name.

30.    Lauren D'Olympio, who resigned without notice on January 25, 2020 also copied and deleted Cutera information from her Cutera-owned laptop, as more fully set forth in the Declaration of Kevin Clarke. For example, there is evidence that she emailed documents from her Cutera email account to a personal Gmail account (ldolympio@gmail.com), including an email on January 17, 2020, containing an attachment entitled "Cutera Suggested Pricing.doc." On January 27, 2020, after she resigned from Cutera, she also deleted numerous files that appear to contain Cutera and Lutronic information, such as "XEO ROI.xls", "Boston Workshop 2018 Attendee List.xlsx", "Top 70 YE Account (1).xlsx", "Play by Play Q3.xlsx", "LD Top 20 Q2.xlsx", "Cutera Customers Last 4 Years.xlsx", "Escalate or Escalade Pitch.docx", "Master Territory List.htm", "Genius – Lutronic.pptx", "Master Territory List_files", "NH ME Coolsculpt accounts.xlsx", "TruSculptFlex Pitch.docx", "Gensis – Lutronic.pptx", "Target Current Customers.xlsx", "LD Hitter List.xlsx", "Cutera Customers Last 3 Years.xlsx", "Cutera Customers All Time.xlsx", "share-sales-metrials.lnk", "BTL MASTER LIST with contact names.xlsx", "Q4 Top 40.xlsx.", "Cutera Suggested Pricing.doc", and "2020 HIT LIST LETS FUCKING GO.docx."

31.    Since January 2020, Cutera has already incurred thousands of dollars in in fees and expenses relating to the computer forensic investigation of the Former Cutera Employees' Cutera-issued laptops, and these expenses will continue to grow as Cutera undertakes a more intensive analysis of the Former Cutera Employees' and other recently departed employees' computers. The ongoing threat of Lutronic unlawfully soliciting Cutera's employees through the use of Cutera's trade secrets, and the former Cutera employees subsequently transferring, copying, and deleting Cutera's confidential and propriety information, presents a genuine, continuous and incalculable risk to Cutera's business opportunities.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, and that this declaration was executed on February 20 , 2020 in Minneapolis, Minnesota.

Shelby Eckerman

Shelby Eckerman

Error! Unknown document property name.

DECLARATION OF SHELBY ECKERMAN ISO
PLAINTIFF'S EX PARTE APPLICATION FOR
TRO AND OSC RE: PRELIMINARY
INJUCTION AND FOR ORDER RE
PRESERVATION OF EVIDENCE
CASE NO. 2:20-CV-00235-KJM-DB

-17-

# EXHIBIT A

<u>**Code of Business Conduct & Ethics**</u>

### I.     A Message from Our Chief Executive Officer

Dear Cutera Teammates:

Our values and our Code of Business Conduct & Ethics serve as our guides to conducting business with the highest integrity and the highest ethical standards. Our values reflect Cutera's culture and help to ground us by guiding our day-to-day actions with customers and colleagues. Similarly, Cutera's Code of Business Conduct & Ethics and related policies provide important guidance to conduct our daily affairs. They apply to all employees and members of the Board of Directors of Cutera. As a team, we have worked very hard to build a successful and well-respected company. We simply cannot - and will not - tolerate unethical or inappropriate behavior.

Remember, if you have a question or concern about what is proper conduct for you or anyone else, you may always talk to your supervisor or the Vice President, General Counsel and Corporate Secretary at 415-657-5500.  You may also report possible violations by calling the Cutera Business Conduct and Ethics Hotline at 415-657-5797, where you may choose to remain anonymous. Now more than ever, building a great company requires an unwavering commitment to the highest ethical standards. Each of us is accountable to do the right thing.

 Sincerely,


R. Jason Richey

Interim Chief Executive Officer

Chief Operating Officer

### XIII. Protection of Intellectual Property & Confidential Information

#### General

#### Confidential Information

In carrying out Cutera business, employees, officers and directors often learn confidential or proprietary information about our company, its customers, prospective customers, or other third parties. Employees, officers and directors must maintain the confidentiality of all information so entrusted to them, except when disclosure is authorized or legally mandated. Confidential or proprietary information includes, among other things, any non-public information concerning Cutera, including its businesses, financial performance, results or prospects, and any nonpublic information provided by a third party with the expectation that the information will be kept confidential and used solely for the business purpose for which it was conveyed.

#### Intellectual Property & Protecting IP

Our intellectual property is among our most valuable assets. Intellectual property refers to creations of the human mind that are protected by various national laws and international treaties. Intellectual property includes copyrights, patents, trademarks, trade secrets, design rights, logos, expertise, and other intangible industrial or commercial property. We must protect and, when appropriate, enforce our intellectual property rights. We also respect the intellectual property belonging to third parties. It is our policy to not knowingly infringe upon the intellectual property rights of others.

### XIV. Communicating with External Parties

#### Directions to Employees Regarding Outside Inquiries

To ensure professional handling, all media requests and requests from financial analysts, stockholders, and industry analysts should be directed to the Vice President, Investor Relations. Employees are encouraged to forward all such requests to ensure consistency of our public messaging, as well as ensure compliance with disclosure laws relevant to publicly-traded companies such as Cutera.

### XV. Records Management

#### General

Our records are our corporate memory, providing evidence of actions and decisions and containing data and information critical to the continuity of our business. Records consist of all forms of information created or received by Cutera, whether originals or copies, regardless of media. Examples of company records include paper documents, e-mail, electronic files stored on hard drive, disk or any other medium (CD, DVD, USB data storage devices, etc.) that contains information about our company or our business activities.

All records are the property of Cutera and should be retained in accordance with our Records Retention Policy. We are responsible for properly labeling and carefully handling confidential, sensitive, and proprietary information and securing it when not in use. We do not destroy official company documents or records before the retention time expires, but do destroy documents when

they no longer have useful business purpose. Refer to the Records Retention Schedule as implemented in your department for more specific retention and destruction guidelines.

**Employee Responsibilities**

Retain or discard Cutera's records in accordance with the Cutera's record retention policies. Cutera's General Counsel may occasionally issue notices regarding retention of records in the case of actual or threatened litigation or government investigation. Employees must abide by the directions contained in these notices, as failure to do so could subject the Company and employees to serious legal risks. If employees have questions about the record-keeping requirements that apply to their jobs, please contact the General Counsel.

## XVI.   Proper Use and Protection of Electronic Communications

### General

Cutera's information technology and communications systems are vital to enable us to conduct our business and reach out to our consumers. If you have access to our information systems and computer networks, you are responsible for using the highest standards of behavior in all of your usage and communications. When you access our networks from remote locations (for example, at home or from other non-company locations), you are subject to the same standards of use as are employees who access our networks while on company premises. The data transmitted, received and stored by or within those systems, such as telephones, personal computers, data storage units, email, or pagers, are valuable assets that we must protect to ensure that these resources are accessible for business purposes, that our company's reputation is protected, and that we minimize the potential for legal risk. Limited personal use may be acceptable if it is authorized by your work location and does not interfere with your job responsibilities.

Safeguard the following:

- **Passwords:** You are responsible for your corporate credentials. Passwords must meet corporate standards and must be kept private, and therefore not shared, coded into programs or written down. IT Security must be informed in the event that a password is suspected of having been compromised. Do not share your passwords with anyone at any time.
- **Mobile Security:** You must protect Cutera assets. It is extremely important that you treat your mobile device like any other Corporate IT device. Mobile device security can be breached and infected just like a PC, laptop, etc. Never click links, download files, or execute programs on your mobile device unless it is required and you are certain of the source and legitimacy of the content. Always protect such items from loss, theft or damage.
- **Acceptable Usage:** It is not permitted to use Cutera information technology and communications systems (including email, instant messaging, the Internet or intranet) for activities that are harmful, unlawful, unethical, immoral or otherwise contrary to the Code.

### Examples of Inappropriate Computer Use

Examples of Inappropriate Computer Use:

- Never use electronic media to initiate, save, or send items that are hostile, harassing, offensive, threatening, or otherwise inappropriate.

- Do not use electronic media to initiate, save, or send chain letters or other widespread non-business distributions.
- Do not use electronic media to initiate or participate in any malicious, unauthorized, or fraudulent use of company resources.
- Think before you use Cutera electronic media for non-business purposes and comply with the policies of your business unit.

Remember: The unauthorized transmission of company data, access to inappropriate internet sites, and the transmission of inappropriate e-mails are examples of misuse of technology.

## XVII. Trade Compliance

### General

We are all responsible for complying with U.S. federal import and export laws and regulations and all applicable laws that govern international trade, which are complex and may change quickly as governments adjust to new political and security issues. If your work is governed by U.S. custom laws, it is your responsibility to understand the laws and regulations that relate to international trade. We also expect all of our vendors to know and understand the laws that apply to their products, including those of customs and any other U.S. government agencies.

If you work in our supply chain, you need to make sure you (and our vendors) provide accurate product descriptions, correct tariff classifications, valuation information and country of origin statements for all items we import or export, whenever required.

If you have a question or concern, report it immediately.

## XVIII. Substance Abuse/Drug and Alcohol-Free Workplace

### General

Cutera strives to maintain a workplace that is free from illegal use, possession, sale, or distribution of alcohol or controlled substances. Legal or illegal substances shall not be used in a manner that impairs a person's performance of assigned tasks.

### Drug Testing

Our company reserves the right to have any employee tested if there is reasonable suspicion that he or she is under the influence of drugs or alcohol. If you are using prescription or non-prescription drugs that may impair alertness or judgment, or witness an employee impaired and therefore possibly jeopardizing the safety of others or Cutera business interests, you should report it immediately. If you have a problem related to alcohol or drugs, you are encouraged to seek assistance from the Employee Assistance Program or other qualified professionals and review the Cutera Substance Abuse Policy.

### Employee Assistance Programs

Alcohol and drug abuse can endanger the health, safety and security of our employees and our customers, adversely affect the quality and effectiveness of our company operations and potentially harm fellow employees, the communities we live in and our company reputation. The use, possession, sale, purchase, distribution, manufacture or transfer of alcohol, illegal drugs, or

# EXHIBIT B



FACE + BODY AESTHETIC SOLUTIONS

# *EMPLOYEE HANDBOOK*

## *US VERSION*

### *JANUARY 1, 2020*

For purposes of this policy, family members include child, stepchild, grandchild, spouse, domestic partner, sibling, parent, stepparent, or grandparent; or child, grandchild, parent, stepparent, or grandparent of current spouse or domestic partner.

This policy shall be applied to the greatest extent possible consistent with applicable laws.

## 2016   CONFLICTS OF INTEREST

Situations of actual or potential conflict of interest are to be avoided by all employees. Personal or romantic involvement with a competitor, supplier or subordinate employee of the company that impairs an employee's ability to exercise good judgment on behalf of the company, creates an actual or potential conflict of interest.  Supervisor-subordinate romantic or personal relationships also can lead to supervisory problems, possible claims of sexual harassment and morale problems.

An employee involved in any of the types of relationships or situations described in this policy should immediately and fully disclose the relevant circumstances to his/her immediate supervisor, or any other appropriate supervisor, for a determination as to whether a potential or actual conflict exists.  If an actual or potential conflict is determined, the company may take whatever corrective action appears appropriate according to the circumstances.  Failure to disclose facts shall constitute grounds for disciplinary action.

Employees must avoid any activity, agreement, business investment, or interest that could be in conflict with company's interests, or that could interfere with employee's duties and ability to best serve the company.  If questions arrive about whether or not a conflict of interest exists, they should be brought to the attention of employee's manager.

Prohibited activities include, but are not limited, to the following:

- Disclosing any trade secrets or confidential, sensitive, or proprietary information about the company, its clients, its products, or its programs to persons outside the company.
- Owning, operating, or being employed as an employee or consultant by any business that competes, directly or indirectly, with the Company.
- Having a direct or indirect financial relationship with a competitor, customer, or supplier of the company; however, no conflict will exist in the case of ownership of less than one percent of the publicly traded stock of a corporation.
- Engaging in any other employment or non-work related activities during company work hours, or using company supplies or equipment in other employment or activities at any time.

When a conflict of interest is found to exist, the conflict may result in discipline up to and including termination.  Full-time employees are expected to devote their full working time and efforts exclusively to the Company.  Outside jobs are discouraged for full-time employees for job effectiveness reasons.

This policy, however, shall not preclude you from engaging in appropriate additional activities, including civic, charitable, or religious activities or services, provided that such activities or services do not interfere or conflict with your responsibilities at the Company.

Part-time employees may engage in outside employment, provided that they disclose such employment and get written approval from their immediate supervisor. Employees must not engage in any outside employment that conflicts with the employee's work schedule, duties, and responsibilities.

Any employee considering holding a second position is expected to advise the company. Cutera may request that the employee not take outside employment if it conflicts with employee's company position or prevents employee from effectively meeting performance standards for employee's position with the company.

Cutera expects that its work requirements, including overtime, will have precedence over any outside work. If, as a result of any outside employment, employee is unable to maintain a high work performance standard, employee may be subject to discipline, up to and including termination.

## 2017   BRIDGING OF TIME

The company will give credit to employees previously employed by the company, provided the break in service does not exceed 365 days. The break in service time will be deducted from the employee's original service date for purposes of the following:

- Seniority date
- Paid Time Off accrual

## 2018   REDUCTIONS IN FORCE

Under some circumstances, the company may need to restructure or reduce its workforce. If it becomes necessary to restructure our operations or reduce the number of employees, the company will attempt to provide advance notice, if possible, so as to minimize the impact on those affected. If possible, employees subject to layoff will be informed of the nature of the layoff and the foreseeable duration of the layoff, whether short-term or indefinite.

In determining which employees will be subject to layoff, the company will take into account, among other things, operation and requirements, the skill, productivity, ability and past performance of those involved and also, where feasible, the employee's length of service.

## 2019   INVOLUNTARY TERMINATIONS AND DISCIPLINE

Violation of company policies and rules may warrant disciplinary action up to and including termination. The company has established a system of discipline that includes verbal warnings, written warnings and suspension or termination. The system is not

absence or tardiness, employees must provide their supervisor with an honest reason or explanation. Employees also must inform their supervisor of the expected duration of any absence.

Except in extenuating circumstances, you must call in on any day you are scheduled to work and will not report to work. Special reporting arrangements can be made with your supervisor when a protracted or lengthy illness or hospitalization is involved. Your work schedule must be agreed with your supervisor and be in the best interests of Cutera.

Late arrival, early departure or other absences from scheduled hours are disruptive and must be avoided whenever possible. Excessive absenteeism (unplanned PTO) or tardiness (whether excused or not) will not be tolerated. Tardiness is excessive if you are frequently or unnecessarily late, or if you demonstrate a pattern of tardiness. This company defines excessive absenteeism as more than four percent of your scheduled work hours.

If you fail to report for work without any notification to your supervisor and your absence continues for a period of three days, the company will consider that you have abandoned your employment and have voluntarily terminated.

If you are absent longer than three days due to illness, medical evidence of your illness and/or medical certification of your fitness to return to work satisfactory to the company will be required.

## 3004  CUSTOMER RELATIONS

Employees are expected to be polite, courteous, prompt and attentive to every customer, potential customer, or co-worker. When a situation arises where the employee does not feel comfortable or capable of handling the problem, the supervisor should be called immediately.

## 3005  CONFIDENTIALITY

Each employee is responsible for safeguarding confidential information obtained during employment. In the course of your work, you may have access to confidential information regarding the company, its financial forecasts or results, its intellectual property, its suppliers, its customers, its products, its plans or perhaps even fellow employees. It is your responsibility to in no way reveal or divulge any such information unless it is necessary for you to do so in the performance of your duties. Please refer to the Company's Proprietary Information Agreement if you have any questions.

Access to confidential information should be on a "need-to-know" basis and must be authorized by your supervisor. Any breach of this policy will not be tolerated and legal action may be taken by the company. Disclosure of company confidential information, including but not limited to products, intellectual property, patents, strategy, customers, suppliers, plans, or financial information to non-employees may only be conducted with confidentiality agreements signed by an officer of the company.

If you believe a breach of company confidential or intellectual property information has been made, please report it to your manager and the Vice President of Global Human Resources so an investigation can begin. If you believe one of those two individuals was involved in the release of company proprietary information, you should report it to the other individual. If you believe both of those individuals were involved in the breach, you should report it directly to the Chief Financial Officer or the Chief Executive Officer for appropriate remedial action.

## 3006 BUSINESS CONDUCT AND ETHICS

Please see the **Cutera Code of Ethics** that you received as part of your initial orientation package, for a complete description of the behavior that we encourage in our employees. If you believe someone has violated this Code, please report it to your manager and the Vice President of Global Human Resources, the General Counsel, or the Chief Executive Officer for investigation and appropriate action.

If you believe either your manager or the Vice President of Global Human Resources was in violation of this Code, please report it to the other individual. If you believe both individuals were involved in the violation, you should report it directly to the General Counsel or the Chief Executive Officer for appropriate remedial action.

In no event may a gift, gratuity or expense payment influence a business decision, transaction or service.

## 3007 MEDIA CONTACT

All public relations activities and media requests regarding the Company will be coordinated and managed to ensure dissemination of only accurate and appropriate information to the public and to provide a positive, professional appearance of the Company and the Company's products.

When members of the media contact employees to discuss anything that pertains to the Company, those individuals should be directed to the CEO, who will handle all requests in a prompt, courteous manner. The media can include blogs, newspapers, television, trade publications, etc. Only employees authorized by the Company may speak on behalf of the Company with the media.

## 3008 COMPANY CELL PHONE

Cutera requires that employees act responsibly when using cellular telephones. Courtesy dictates that employees not use cellular telephones in the common areas of the office so as not to disturb other employees during work. Further, employees who utilize cellular telephones in the office should place the ringers on vibrate or other silent notification so the work of other employees is not interrupted.

An employee is not to use a hand-held cellular telephone while driving for work-related purposes or when taking work-related calls. An employee may be subject to a law

# EXHIBIT C



## CUTERA, INC.

### EMPLOYEE PROPRIETARY INFORMATION
### AND ASSIGNMENT OF INVENTIONS AGREEMENT

As a condition of my employment or continued employment with Cutera, Inc., a Delaware corporation, its subsidiaries, affiliates, successors or assigns (together the "Company"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1. <u>At-Will Employment</u>. I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice.

2. <u>Confidential Information</u>.

(a) <u>Company Information</u>. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of an officer of the Company, any Confidential Information of the Company. I understand that "**Confidential Information**" means Company Trade Secrets and any Company proprietary information, technical data and know-how that is not publicly known. "<u>**Trade Secrets**</u>" means information that derives independent economic value, actual or potential, from not being generally known to the public or other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. For example, Confidential Information may include (but is not limited to) research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, financial or other business information disclosed to me by the Company either directly or indirectly and by any means, including in writing, orally, by drawings, or by observation of parts or equipment. I will promptly notify the Company if I am legally compelled to disclose any Confidential Information by the order of any court or governmental investigative or judicial agency pursuant to proceedings over which such court or agency has jurisdiction, and I will limit disclosure of Confidential Information consistent with the scope of any such order.

Confidential Information does not include any of the foregoing items which: (i) becomes publicly known or generally available through no wrongful act by me or by others who were under confidentiality obligations as to the item(s) involved; (ii) I already knew prior to commencement of my employment with the Company, other than by disclosure to me by the Company; (iii) I lawfully receive from someone outside the Company who is not obligated to keep the information confidential; or (iv) is explicitly approved in writing for release by an officer of the Company.

(b) <u>Former Employer Information</u>. I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any proprietary documents belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity. If, at any time during my employment with the Company, I am requested by the Company to perform work which I believe may cause me to violate a duty I have to a third party, I will immediately inform an officer of the Company so that an assessment of the situation may be made.

(c) <u>Third Party Information</u>. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3. Inventions.

(a) <u>Inventions Retained and Licensed</u>. I have attached hereto, as <u>Exhibit A</u>, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company, which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder (collectively referred to as "**Prior Inventions**"); or, if no such list is attached, I certify that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into any invention, improvement, development, product, copyrightable material or trade secret any invention, improvement, development, concept, discovery or other proprietary information owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such item as part of or in connection with such product, invention, or process.

(b) <u>Assignment of Inventions</u>. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am employed by the Company (collectively referred to as "**Inventions**"), except as provided in Section 3(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act.

(c) <u>Inventions Assigned to the United States</u>. I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d) <u>Maintenance of Records</u>. I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e) <u>Patent and Copyright Registrations</u>. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Employee Proprietary Information and Assignment of Inventions Agreement ( the "**Agreement**"). If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents or copyright registrations thereon with the same legal force and effect as if executed by me.

(f) <u>Exception to Assignments</u>. I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any Invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as <u>Exhibit B</u>). I will advise the Company promptly in writing of any inventions that I believe meet the criteria stated in California Labor Code Section 2870 and are not disclosed on <u>Exhibit A</u>.

4. <u>Conflicting Employment</u>. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5. <u>Returning Company Documents and Other Property</u>. I agree that, at the time my employment with the Company ends, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns. Upon the termination of my employment, I agree to sign and deliver the **"Termination Certification"** attached hereto as <u>Exhibit C, or a substantially similar certification provided by the Company</u>.

6. <u>Notification to New Employer</u>. After the termination of my employment with the Company, I hereby grant permission to the Company to notify my new employer about my rights and obligations under this Agreement.

7. <u>Non-Solicitation of Employees, Consultants, and Customers</u>.

(a) <u>Non-Solicitation of Employees and Consultants</u>. I recognize the highly competitive nature of the business of the Company and that Company employees are exposed to Trade Secrets of the Company, which may include Confidential Information regarding its employees and consultants. Accordingly, I shall not either directly or indirectly, on my own behalf or on behalf of others, use such Trade Secrets to (a) solicit, induce, recruit, or encourage any of the Company's employees or consultants to leave their employment or consulting relationship with the Company to work for a competitor of the Company, or (b) attempt to do any of the foregoing. Additionally, for a period of twelve (12) months immediately following the termination of my employment with the Company for any reason, whether with or without cause, I shall not either directly or indirectly, on my own behalf or on behalf of others (c) solicit, induce, recruit, or encourage any of the Company's employees or consultants to leave their employment or consulting relationship with the Company to work for a competitor of the Company, or (d) attempt to do any of the foregoing.

(b) <u>Non-Solicitation of Customers</u>. I recognize the highly competitive nature of the business of the Company, and acknowledge that Company employees are exposed to Trade Secrets of the Company which may include information regarding its customers and clients. Accordingly, I agree that I will not use such Trade Secrets to solicit, on my own behalf or on behalf of others, business from any person or entity.

8. <u>Representations</u>. I agree to execute any oath or verify any document reasonably required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not constitute a breach of any agreement to keep in confidence proprietary information acquired by me in confidence prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement that conflicts with this Agreement.

9. <u>Arbitration and Equitable Relief</u>.

(a) <u>Arbitration</u>. Subject to the provisions of subsection (b) below, you and the Company agree that any dispute or controversy arising out of, relating to or concerning any aspect of your employment relationship with the Company (including the termination thereof) and/or concerning any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held before a neutral arbitrator in San Mateo County, California, under the auspices of JAMS, in accordance with its Employment Arbitration Rules & Procedures then in effect (except to the extent such rules are modified by any provision of this section 9). Such rules are specifically incorporated herein by reference. Copies of the Arbitration Rules shall be made available to you upon request. Notwithstanding the foregoing, nothing herein is intended to nor shall it preclude any employee from filing an administrative charge of discrimination or harassment with the California Department of Fair Employment and Housing or the United States Equal Opportunity Commission.

(b)    Any party desiring to initiate arbitration must initiate the arbitration by delivering to the other party a written demand for arbitration.  The demand shall include a concise statement of the issue(s) to be arbitrated, along with a statement setting forth the relief requested.  The demand for arbitration shall be delivered within the statute of limitation that is applicable to the claim(s) upon which the arbitration is sought.  Any failure to demand arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claims in any forum arising out of any dispute that was subject to arbitration.

(c)    The arbitrator shall permit discovery, consistent with applicable law, sufficient to allow any party to the arbitration to take such discovery as is sufficient to allow that party to secure the necessary information to present his, her or its claim.

(d)    The arbitrator shall be empowered to award either party any remedy at law or equity that the prevailing party would otherwise be entitled to had the matter been litigated in court, including, but not limited to, general, special and punitive damages; recoverable costs (where provided by statute); and attorneys' fees (where provided by statute or contract).  The arbitrator may grant injunctions or other equitable relief in such dispute or controversy.  The arbitrator's authority to award any remedy is subject to whatever limitation, if any, which exists in the applicable law on the awarding of such remedies.  The arbitrator shall have no jurisdiction to issue any award contrary to or inconsistent with applicable law.

(e)    The decision of the arbitration shall be final, conclusive and binding on the parties to the arbitration.  The decision and award issued by the arbitrator shall be in writing and shall set forth the essential findings and conclusions that form the basis of the decision and award.  Judgment may be entered on the arbitrator's award in any court having jurisdiction.

(f)    Equitable Remedies.  Any disputes concerning the enforcement, scope and/or applicability of these rules shall in the first instance be determined by the arbitrator.  If any party shall disregard this arbitration procedure, the other party may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief, as necessary, to enforce the terms of this section 9, governing arbitration, without breach of this Agreement and without abridgment of the powers of the arbitrator.

(g)    Waiver of Jury Trial.  You understand that this arbitration clause constitutes a waiver of your right to a jury trial and relates to the resolution of all disputes relating to all aspects of the employment relationship between you and the Company (including the termination of that relationship) and /or this Agreement (except as provided in subsection (b) above).

(h)    Fees and Costs.  The Company shall pay any fees and costs charged by JAMS, the arbitrator to hear the arbitration of this matter, the court reporter costs and room rental fees to the extent such fees and costs would not customarily be borne by you in the event the dispute were litigated in court.  Any remaining fees and costs, including, but not limited to, attorneys' fees shall, subject to any remedy which the prevailing party may be entitled to under the law, be borne by each party to the same extent as the party would be responsible for such fees and costs if the matter would have been litigated in court.

(i)    **Acknowledgment.  You have read and understand this section, which discusses arbitration.  You understand that by signing this Agreement, you agree to submit any claims arising out of, relating to or concerning any aspect of your employment relationship with the Company (including the termination thereof) and/or concerning any interpretation, construction, performance or breach of this Agreement to binding arbitration, except as provided in subsection (b) above, and that this arbitration clause constitutes a waiver of your right to a trial in a court and relates to all aspects of the relationship between the parties.**

10. General Provisions

(a)    Governing Law; Consent to Personal Jurisdiction.  This Agreement will be governed by and construed in accordance with the laws of the state of California, as applied to contracts made and to be performed in California, without applying conflict of laws rules.  I hereby expressly consent to the personal jurisdiction of the state and federal

courts located in San Mateo County, California and the Northern District of California, for any lawsuit seeking equitable remedies, as provided for in section 9(f) above, filed there against me by the Company arising from or relating to any aspect of my employment relationship with the Company (including the termination of that relationship) and/or this Agreement.

      (b)   <u>Entire Agreement and Amendment; Waiver</u>.   This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior understandings, writings, proposals, representations or communications between us, oral or written, relating to the subject matter hereof. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be bound. For the Company, only the Chief Executive Officer, President or a Vice President is authorized to sign a modification, amendment, or waiver. A waiver of any default hereunder or of any of the terms and conditions of this Agreement shall not be deemed to be a continuing waiver or a waiver of any other default or of any other term or condition, but shall apply solely to the instance to which such waiver is directed. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

      (c)   <u>Severability</u>.   In the event any provision of this Agreement is found to be invalid, illegal or unenforceable, a modified provision shall be substituted which carries out as nearly as possible the original intent of the parties, and the validity, legality and enforceability of any of the remaining provisions shall not in any way be affected or impaired thereby.

      (d)   <u>Assignment; Successors</u>.   I may not assign this Agreement without the prior written consent of the Company. Subject to the preceding sentence, this Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

Signature:       _____

Printed Name:   *Larry Laber*

Date:   *9/1t/14*

Address:   *2253 Wild Plains Circle*
                    *Rocklin, CA 95763*

**EMPLOYEE PROPRIETARY INFORMATION
AND ASSIGNMENT OF INVENTIONS AGREEMENT**

**EXHIBIT A**

**LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP**

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

_✗_ No Prior Inventions (*initial if applicable*)

___ Additional Sheets Attached

Employee Signature: _____

Printed Name: _Larry Laber_

Date: _9/17/14_

**EMPLOYEE PROPRIETARY INFORMATION
AND ASSIGNMENT OF INVENTIONS AGREEMENT**

**EXHIBIT B**

**CALIFORNIA LABOR CODE SECTION 2870
LIMITATIONS ON ASSIGNMENT OF INVENTION PROVISIONS IN
EMPLOYMENT AGREEMENT; UNENFORCEABILITY OF SUCH PROVISIONS**

"(a)  Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1)  Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2)  Result from any work performed by the employee for the employer.

(b)  To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

# EXHIBIT D

# CUTERA

### CUTERA, INC.

### EMPLOYEE PROPRIETARY INFORMATION
### AND ASSIGNMENT OF INVENTIONS AGREEMENT

As a condition of my employment or continued employment with Cutera, Inc., a Delaware corporation, its subsidiaries, affiliates, successors or assigns (together the "**Company**"), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1. At-Will Employment. I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice.

2. Confidential Information.

(a) Company Information. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of an officer of the Company, any Confidential Information of the Company. I understand that "Confidential Information" means Company Trade Secrets and any Company proprietary information, technical data and know-how that is not publicly known. "Trade Secrets" means information that derives independent economic value, actual or potential, from not being generally known to the public or other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. For example, Confidential Information may include (but is not limited to) research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, financial or other business information disclosed to me by the Company either directly or indirectly and by any means, including in writing, orally, by drawings, or by observation of parts or equipment. I will promptly notify the Company if I am legally compelled to disclose any Confidential Information by the order of any court or governmental investigative or judicial agency pursuant to proceedings over which such court or agency has jurisdiction, and I will limit disclosure of Confidential Information consistent with the scope of any such order.

Confidential Information does not include any of the foregoing items which: (i) becomes publicly known or generally available through no wrongful act by me or by others who were under confidentiality obligations as to the item(s) involved; (ii) I already knew prior to commencement of my employment with the Company, other than by disclosure to me by the Company; (iii) I lawfully receive from someone outside the Company who is not obligated to keep the information confidential; or (iv) is explicitly approved in writing for release by an officer of the Company.

(b) Former Employer Information. I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any proprietary documents belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity. If, at any time during my employment with the Company, I am requested by the Company to perform work which I believe may cause me to violate a duty I have to a third party, I will immediately inform an officer of the Company so that an assessment of the situation may be made.

(c) Third Party Information. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

### 3. Inventions.

(a) Inventions Retained and Licensed. I have attached hereto, as Exhibit A, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company, which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder (collectively referred to as "Prior Inventions"); or, if no such list is attached, I certify that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into any invention, improvement, development, product, copyrightable material or trade secret any invention, improvement, development, concept, discovery or other proprietary information owned by me or in which I have an interest, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such item as part of or in connection with such product, invention, or process.

(b) Assignment of Inventions. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all Inventions, original works of authorship, developments, concepts, improvements or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am employed by the Company (collectively referred to as "Inventions"), except as provided in Section 3(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act.

(c) Inventions Assigned to the United States. I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d) Maintenance of Records. I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e) Patent and Copyright Registrations. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Employee Proprietary Information and Assignment of Inventions Agreement ( the "Agreement"). If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents or copyright registrations thereon with the same legal force and effect as if executed by me.

(f) Exception to Assignments. I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any Invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as Exhibit B). I will advise the Company promptly in writing of any inventions that I believe meet the criteria stated in California Labor Code Section 2870 and are not disclosed on Exhibit A.

2 of 7

4. <u>Conflicting Employment</u>. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5. <u>Returning Company Documents and Other Property</u>. I agree that, at the time my employment with the Company ends, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns. Upon the termination of my employment, I agree to sign and deliver the "**Termination Certification**" attached hereto as <u>Exhibit C, or a substantially similar certification provided by the Company.</u>

6. <u>Notification to New Employer</u>. After the termination of my employment with the Company, I hereby grant permission to the Company to notify my new employer about my rights and obligations under this Agreement.

7. <u>Non-Solicitation of Employees, Consultants, and Customers.</u>

(a)     <u>Non-Solicitation of Employees and Consultants</u>. I recognize the highly competitive nature of the business of the Company and that Company employees are exposed to Trade Secrets of the Company, which may include Confidential Information regarding its employees and consultants. Accordingly, I shall not either directly or indirectly, on my own behalf or on behalf of others, use such Trade Secrets to (a) solicit, induce, recruit, or encourage any of the Company's employees or consultants to leave their employment or consulting relationship with the Company to work for a competitor of the Company, or (b) attempt to do any of the foregoing. Additionally, for a period of twelve (12) months immediately following the termination of my employment with the Company for any reason, whether with or without cause, I shall not either directly or indirectly, on my own behalf or on behalf of others (c) solicit, induce, recruit, or encourage any of the Company's employees or consultants to leave their employment or consulting relationship with the Company to work for a competitor of the Company, or (d) attempt to do any of the foregoing.

(b)     <u>Non-Solicitation of Customers</u>. I recognize the highly competitive nature of the business of the Company, and acknowledge that Company employees are exposed to Trade Secrets of the Company which may include information regarding its customers and clients. Accordingly, I agree that I will not use such Trade Secrets to solicit, on my own behalf or on behalf of others, business from any person or entity.

8. <u>Representations</u>. I agree to execute any oath or verify any document reasonably required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not constitute a breach of any agreement to keep in confidence proprietary information acquired by me in confidence prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement that conflicts with this Agreement.

9. <u>Arbitration and Equitable Relief.</u>

(a)     <u>Arbitration</u>. Subject to the provisions of subsection (b) below, you and the Company agree that any dispute or controversy arising out of, relating to or concerning any aspect of your employment relationship with the Company (including the termination thereof) and/or concerning any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held before a neutral arbitrator in San Mateo County, California, under the auspices of JAMS, in accordance with its Employment Arbitration Rules & Procedures then in effect (except to the extent such rules are modified by any provision of this section 9). Such rules are specifically incorporated herein by reference. Copies of the Arbitration Rules shall be made available to you upon request. Notwithstanding the foregoing, nothing herein is intended to nor shall it preclude any employee from filing an administrative charge of discrimination or harassment with the California Department of Fair Employment and Housing or the United States Equal Opportunity Commission.

(b)   Any party desiring to initiate arbitration must initiate the arbitration by delivering to the other party a written demand for arbitration. The demand shall include a concise statement of the issue(s) to be arbitrated, along with a statement setting forth the relief requested. The demand for arbitration shall be delivered within the statute of limitation that is applicable to the claim(s) upon which the arbitration is sought. Any failure to demand arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claims in any forum arising out of any dispute that was subject to arbitration.

(c)   The arbitrator shall permit discovery, consistent with applicable law, sufficient to allow any party to the arbitration to take such discovery as is sufficient to allow that party to secure the necessary information to present his, her or its claim.

(d)   The arbitrator shall be empowered to award either party any remedy at law or equity that the prevailing party would otherwise be entitled to had the matter been litigated in court, including, but not limited to, general, special and punitive damages; recoverable costs (where provided by statute); and attorneys' fees (where provided by statute or contract). The arbitrator may grant injunctions or other equitable relief in such dispute or controversy. The arbitrator's authority to award any remedy is subject to whatever limitation, if any, which exists in the applicable law on the awarding of such remedies. The arbitrator shall have no jurisdiction to issue any award contrary to or inconsistent with applicable law.

(e)   The decision of the arbitration shall be final, conclusive and binding on the parties to the arbitration. The decision and award issued by the arbitrator shall be in writing and shall set forth the essential findings and conclusions that form the basis of the decision and award. Judgment may be entered on the arbitrator's award in any court having jurisdiction.

(f)   Equitable Remedies.  Any disputes concerning the enforcement, scope and/or applicability of these rules shall in the first instance be determined by the arbitrator. If any party shall disregard this arbitration procedure, the other party may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief, as necessary, to enforce the terms of this section 9, governing arbitration, without breach of this Agreement and without abridgment of the powers of the arbitrator.

(g)   Waiver of Jury Trial.  You understand that this arbitration clause constitutes a waiver of your right to a jury trial and relates to the resolution of all disputes relating to all aspects of the employment relationship between you and the Company (including the termination of that relationship) and /or this Agreement (except as provided in subsection (b) above).

(h)   Fees and Costs.  The Company shall pay any fees and costs charged by JAMS, the arbitrator to hear the arbitration of this matter, the court reporter costs and room rental fees to the extent such fees and costs would not customarily be borne by you in the event the dispute were litigated in court.  Any remaining fees and costs, including, but not limited to, attorneys' fees shall, subject to any remedy which the prevailing party may be entitled to under the law, be borne by each party to the same extent as the party would be responsible for such fees and costs if the matter would have been litigated in court.

(i)   **Acknowledgment.  You have read and understand this section, which discusses arbitration.  You understand that by signing this Agreement, you agree to submit any claims arising out of, relating to or concerning any aspect of your employment relationship with the Company (including the termination thereof) and/or concerning any interpretation, construction, performance or breach of this Agreement to binding arbitration, except as provided in subsection (b) above, and that this arbitration clause constitutes a waiver of your right to a trial in a court and relates to all aspects of the relationship between the parties.**

10. General Provisions

(a)   Governing Law; Consent to Personal Jurisdiction.  This Agreement will be governed by and construed in accordance with the laws of the state of California, as applied to contracts made and to be performed in California, without applying conflict of laws rules.  I hereby expressly consent to the personal jurisdiction of the state and federal

courts located in San Mateo County, California and the Northern District of California, for any lawsuit seeking equitable remedies, as provided for in section 9(f) above, filed there against me by the Company arising from or relating to any aspect of my employment relationship with the Company (including the termination of that relationship) and/or this Agreement.

(b) Entire Agreement and Amendment; Waiver. This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior understandings, writings, proposals, representations or communications between us, oral or written, relating to the subject matter hereof. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be bound. For the Company, only the Chief Executive Officer, President or a Vice President is authorized to sign a modification, amendment, or waiver. A waiver of any default hereunder or of any of the terms and conditions of this Agreement shall not be deemed to be a continuing waiver or a waiver of any other default or of any other term or condition, but shall apply solely to the instance to which such waiver is directed. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c) Severability. In the event any provision of this Agreement is found to be invalid, illegal or unenforceable, a modified provision shall be substituted which carries out as nearly as possible the original intent of the parties, and the validity, legality and enforceability of any of the remaining provisions shall not in any way be affected or impaired thereby.

(d) Assignment; Successors. I may not assign this Agreement without the prior written consent of the Company. Subject to the preceding sentence, this Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

Signature: _____

Printed Name: John Yannacone

Date: 6/28/12

Address: 18 Trolley Rd Cortlandt Manor
NY 10567

**EMPLOYEE PROPRIETARY INFORMATION**
**AND ASSIGNMENT OF INVENTIONS AGREEMENT**

**EXHIBIT A**

**LIST OF PRIOR INVENTIONS**
**AND ORIGINAL WORKS OF AUTHORSHIP**

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

*∅* No Prior Inventions (*initial if applicable*)

⎯ Additional Sheets Attached

Employee Signature: _____

Printed Name: John Iannocone

Date: 6/28/12

# EMPLOYEE PROPRIETARY INFORMATION
## AND ASSIGNMENT OF INVENTIONS AGREEMENT

## EXHIBIT B

### CALIFORNIA LABOR CODE SECTION 2870
### LIMITATIONS ON ASSIGNMENT OF INVENTION PROVISIONS IN
### EMPLOYMENT AGREEMENT; UNENFORCEABILITY OF SUCH PROVISIONS

"(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

# EXHIBIT E

**CUTERA**

**EMPLOYEE PROPRIETARY INFORMATION
AND ASSIGNMENT OF INVENTIONS AGREEMENT**

As a condition of my employment with Cutera, a Delaware corporation, its subsidiaries, affiliates, successors or assigns (together the **"Company"**), and in consideration of my employment with the Company and my receipt of the compensation now and hereafter paid to me by the Company, I agree to the following:

1. <u>At-Will Employment</u>. I understand and acknowledge that my employment with the Company is for an unspecified duration and constitutes "at-will" employment. I acknowledge that this employment relationship may be terminated at any time, with or without good cause or for any or no cause, at the option either of the Company or myself, with or without notice.

2. <u>Confidential Information</u>.

(a) <u>Company Information</u>. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company. I understand that **"Confidential Information"** means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, financial or other business information disclosed to me by the Company either directly or indirectly, in writing, orally, by drawings, or by observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of mine or of others who were under confidentiality obligations as to the item or items involved.

(b) <u>Former Employer Information</u>. I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other person or entity and that I will not bring onto the premises of the Company any proprietary documents belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

(c) <u>Third Party Information</u>. I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person, firm or corporation or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

3. <u>Inventions</u>.

(a) <u>Inventions Retained and Licensed</u>. I have attached hereto, as <u>Exhibit A</u>, a list describing all inventions, original works of authorship, developments, improvements, and trade secrets which were made by me prior to my employment with the Company, which belong to me, which relate to the Company's proposed business, products or research and development, and which are not assigned to the Company hereunder (collectively referred to as **"Prior Inventions"**); or, if no such list is attached, I certify that there are no such Prior Inventions. If in the course of my employment with the Company, I incorporate into any invention, improvement, development, product, copyrightable material or trade secret any invention, improvement, development, concept, discovery or other proprietary information owned by me or in which I have an interest,

Page 1 of 8

the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license to make, have made, modify, use and sell such item as part of or in connection with such product, invention, or process.

(b) <u>Assignment of Inventions</u>. I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and hereby assign to the Company, or its designee, all my right, title, and interest in and to any and all inventions, original works of authorship, developments, concepts, improvements or trade secrets, whether or not patentable or registrable under copyright or similar laws, which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or developed or reduced to practice, during the period of time I am employed by the Company (collectively referred to as **"Inventions"**), except as provided in Section 3(f) below. I further acknowledge that all original works of authorship which are made by me (solely or jointly with others) within the scope of and during the period of my employment with the Company and which are protectible by copyright are "works made for hire," as that term is defined in the United States Copyright Act.

(c) <u>Inventions Assigned to the United States</u>. I agree to assign to the United States government all my right, title, and interest in and to any and all Inventions whenever such full title is required to be in the United States by a contract between the Company and the United States or any of its agencies.

(d) <u>Maintenance of Records</u>. I agree to keep and maintain adequate and current written records of all Inventions made by me (solely or jointly with others) during the term of my employment with the Company. The records will be in the form of notes, sketches, drawings, and any other format that may be specified by the Company. The records will be available to and remain the sole property of the Company at all times.

(e) <u>Patent and Copyright Registrations</u>. I agree to assist the Company, or its designee, at the Company's expense, in every proper way to secure the Company's rights in the Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating thereto in any and all countries, including the disclosure to the Company of all pertinent information and data with respect thereto, the execution of all applications, specifications, oaths, assignments and all other instruments which the Company shall deem necessary in order to apply for and obtain such rights and in order to assign and convey to the Company, its successors, assigns and nominees the sole and exclusive rights, title and interest in and to such Inventions, and any copyrights, patents, mask work rights or other intellectual property rights relating thereto. I further agree that my obligation to execute or cause to be executed, when it is in my power to do so, any such instrument or papers shall continue after the termination of this Employee Proprietary Information and Assignment of Inventions Agreement ( the **"Agreement"**). If the Company is unable because of my mental or physical incapacity or for any other reason to secure my signature to apply for or to pursue any application for any United States or foreign patents or copyright registrations covering Inventions or original works of authorship assigned to the Company as above, then I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney-in-fact, to act for and in my behalf and stead to execute and file any such applications and to do all other lawfully permitted acts to further the prosecution and issuance of patents or copyright registrations thereon with the same legal force and effect as if executed by me.

(f) <u>Exception to Assignments</u>. I understand that the provisions of this Agreement requiring assignment of Inventions to the Company do not apply to any Invention which qualifies fully under the provisions of California Labor Code Section 2870 (attached hereto as <u>Exhibit B</u>). I will advise the Company promptly in writing of any inventions that I believe meet the criteria stated in California Labor Code Section 2870 and are not disclosed on <u>Exhibit A</u>.

4. <u>Conflicting Employment</u>. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

5. <u>Returning Company Documents</u>. I agree that, at the time my employment with the Company ends, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes,

Page 2 of 8

reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns. Upon the termination of my employment, I agree to sign and deliver the "Termination Certification" attached hereto as <u>Exhibit C, or a substantially similar certification provided by the Company.</u>

6. <u>Notification to New Employer</u>. After the termination of my employment with the Company, I hereby grant permission to the Company to notify my new employer about my rights and obligations under this Agreement.

7. <u>Solicitation of Employees and Consultants</u>. I agree that for a period of twelve (12) months immediately following the termination of my employment with the Company for any reason, whether with or without cause, I shall not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees or consultants to leave their employment or consultancy, or take away such employees or consultants, or attempt to solicit, induce, recruit, encourage or take away employees or consultants of the Company, either for myself or for any other person or entity.

8. <u>Representations</u>. I agree to execute any oath or verify any document reasonably required to carry out the terms of this Agreement. I represent that my performance of all the terms of this Agreement will not constitute a breach of any agreement to keep in confidence proprietary information acquired by me in confidence prior to my employment by the Company. I have not entered into, and I agree I will not enter into, any oral or written agreement that conflicts with this Agreement.

9. <u>Arbitration and Equitable Relief</u>.

(a) <u>Arbitration</u>. Subject to the provisions of subsection (b) below, you and the Company agree that any dispute or controversy arising out of, relating to or concerning any aspect of your employment relationship with the Company (including the termination thereof) and/or concerning any interpretation, construction, performance or breach of this Agreement, shall be settled by arbitration to be held before a neutral arbitrator in San Mateo County, California, under the auspices of JAMS, in accordance with its Arbitration Rules and Procedures for Employment Disputes then in effect (except to the extent such rules are modified by any provision of this section 9). Such rules are specifically incorporated herein by reference. Copies of the Arbitration Rules shall be made available to you upon request. Notwithstanding the foregoing, nothing herein is intended to nor shall it preclude any employee from filing an administrative charge of discrimination or harassment with the California Department of Fair Employment and Housing or the United States Equal Opportunity Commission.

(b) Any party desiring to initiate arbitration must initiate the arbitration by delivering on the other party a written demand for arbitration. The demand shall include a concise statement of the issue(s) to be arbitrated, along with a statement setting forth the relief requested. The demand for arbitration shall be delivered within the statute of limitation that is applicable to the claim(s) upon which the arbitration is sought. Any failure to demand arbitration within this time frame and according to these rules shall constitute a waiver of all rights to raise any claims in any forum arising out of any dispute that was subject to arbitration.

(c) The arbitrator shall permit discovery, consistent with applicable law, sufficient to allow any party to the arbitration to take such discovery as is sufficient to allow that party to secure the necessary information to present his, her or its claim.

(d) The arbitrator shall be empowered to award either party any remedy at law or equity that the prevailing party would otherwise be entitled to had the matter been litigated in court, including, but not limited to, general, special and punitive damages; recoverable costs (where provided by statute); and attorneys' fees (where provided by statute or contract). The arbitrator may grant injunctions or other equitable relief in such dispute or controversy. The arbitrator's authority award any remedy is subject to whatever limitation, if any, which exist in the applicable law on the awarding of such remedies. The arbitrator shall have no jurisdiction to issue any award contrary to or inconsistent with applicable law.

Page 3 of 8

(e)    The decision of the arbitration shall be final, conclusive and binding on the parties to the arbitration.  The decision and award issued by the arbitrator shall be in writing and shall set forth the essential findings and conclusions that form the basis of the decision and award.  Judgment may be entered on the arbitrator's award in any court having jurisdiction.

(f)    Equitable Remedies.  Any disputes concerning the enforcement, scope and/or applicability of these rules shall in the first instance be determined by the arbitrator.  If any party shall disregard this arbitration procedure, the other party may apply to any court of competent jurisdiction for a temporary restraining order, preliminary injunction, or other interim or conservatory relief, as necessary, to enforce the terms of this section 9, governing arbitration, without breach of this Agreement and without abridgment of the powers of the arbitrator.

(g)    Waiver of Jury Trial.  You understand that this arbitration clause constitutes a waiver of your right to a jury trial and relates to the resolution of all disputes relating to all aspects of the employment relationship between you and the Company (including the termination of that relationship) and /or this Agreement (except as provided in subsection (b) above).

(h)    Fees and Costs.  The Company shall pay any fees and costs charged by JAMS, the arbitrator to hear the arbitration of this matter, the court reporter costs and room rental fees to the extent such fees and costs would not customarily be borne by you in the event the dispute were litigated in court.  Any remaining fees and costs, including, but not limited to, attorneys' fees shall, subject to any remedy which the prevailing party may be entitled to under the law, be borne by each party to the same extent as the party would be responsible for such fees and costs if the matter would have been litigated in court.

(i)    **Acknowledgment.  You have read and understand this section, which discusses arbitration.  You understand that by signing this Agreement, you agree to submit any claims arising out of, relating to or concerning any aspect of your employment relationship with the Company (including the termination thereof) and/or concerning any interpretation, construction, performance or breach of this Agreement to binding arbitration, except as provided in subsection (b) above, and that this arbitration clause constitutes a waiver of your right to a jury trial and relates to all aspects of the relationship between the parties.**

10. General Provisions

(a)    Governing Law; Consent to Personal Jurisdiction.  This Agreement will be governed by and construed in accordance with the laws of the state of California, as applied to contracts made and to be performed in California, without applying conflict of laws rules.  I hereby expressly consent to the personal jurisdiction of the state and federal courts located in San Mateo County, California and the Northern District of California, for any lawsuit seeking equitable remedies, as provided for in section 9(f) above, filed there against me by the Company arising from or relating to any aspect of my employment relationship with the Company (including the termination of that relationship) and/or this Agreement.

(b)    Entire Agreement and Amendment; Waiver.  This Agreement sets forth the entire agreement and understanding between the Company and me relating to the subject matter herein and supersedes all prior understandings, writings, proposals, representations or communications between us, oral or written, relating to the subject matter hereof.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be bound.  For the Company, only the Chief Executive Officer, President or a Vice President is authorized to sign a modification, amendment, or waiver.  A waiver of any default hereunder or of any of the terms and conditions of this Agreement shall not be deemed to be a continuing waiver or a waiver of any other default or of any other term or condition, but shall apply solely to the instance to which such waiver is directed.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

(c)    Severability.  In the event any provision of this Agreement is found to be invalid, illegal or unenforceable, a modified provision shall be substituted which carries out as nearly as possible the original intent of the parties, and the validity, legality and enforceability of any of the remaining provisions shall not in any way be affected or impaired thereby.

(d)  <u>Assignment; Successors</u>.  I may not assign this Agreement without the prior written consent of the Company. Subject to the preceding sentence, this Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

Signature:  _Jonathan W Baker_

Printed Name:  _Jonathan W BAKER_

Date:  _02-21-06_

Address:  _2826 Tweed Place_
_Thompson Station, TN 37179_

**EMPLOYEE PROPRIETARY INFORMATION
AND ASSIGNMENT OF INVENTIONS AGREEMENT**

**EXHIBIT A**

**LIST OF PRIOR INVENTIONS
AND ORIGINAL WORKS OF AUTHORSHIP**

| Title | Date | Identifying Number or Brief Description |
|-------|------|----------------------------------------|
|       |      |                                        |

_✗_ No Prior Inventions (*initial if applicable*)

___ Additional Sheets Attached

Employee Signature: _Jonathan W Baker_

Printed Name: _Jonathan W BAKER_

Date: _02-21-06_

## EMPLOYEE PROPRIETARY INFORMATION
## AND ASSIGNMENT OF INVENTIONS AGREEMENT

### EXHIBIT B

### CALIFORNIA LABOR CODE SECTION 2870
### LIMITATIONS ON ASSIGNMENT OF INVENTION PROVISIONS IN
### EMPLOYMENT AGREEMENT; UNENFORCEABILITY OF SUCH PROVISIONS

"(a) Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own time without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either:

(1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer; or

(2) Result from any work performed by the employee for the employer.

(b) To the extent a provision in an employment agreement purports to require an employee to assign an invention otherwise excluded from being required to be assigned under subdivision (a), the provision is against the public policy of this state and is unenforceable."

# EXHIBIT F

 Canada, Inc.

## PROPRIETARY INFORMATION AGREEMENT

This Proprietary Information Agreement (this "**Agreement**") is made between Cutera Canada Inc. (the "**Company**") and **Jina Kim**. In consideration of my offer of employment with the Company, and other valid and sufficient consideration, I hereby agree to the following:

1. **Confidential Information**

   a. In this Agreement, "**Confidential Information**" means any Company proprietary information, technical data, trade secrets or know-how, including but not limited to research, product plans, products, services, customer lists and customers, inventions, processes, formulas, technology, designs, drawings, marketing, financial or other business information, disclosed to me by the Company, either directly or indirectly, in writing, orally, or by drawings or observation. Confidential Information does not include any and all information which has been made generally available to the public through no wrongful act of mine or others.

   b. I agree that it is a material term of my employment agreement with the Company that I keep all Confidential Information absolutely confidential and protect it from release to the public. I agree not to divulge, reveal, report or use, for any purpose, any of the Confidential Information which I have obtained or which was disclosed to me by the Company as a result of my employment by the Company. I agree that if there is any question as to such disclosure, I will seek out an officer of the Company prior to making any disclosure of any Confidential Information that may be covered by this Agreement.

   c. The obligations to ensure and protect the confidentiality of the Confidential Information imposed on me in this Agreement and any obligations to provide notice under this Agreement will survive the termination of my employment.

   d. Notwithstanding the foregoing, I may disclose any of the Confidential Information:

      i. to a third party, where the an officer of the Company has consented in writing to such disclosure; and

      ii. to the extent required by law or by the request or requirement of any judicial, legislative, administrative or other governmental body; however, I will first have given prompt notice to the Company of any possible or prospective order (or proceeding pursuant to which any order may result), and the Company will have been afforded a reasonable opportunity to prevent or limit any such disclosure.

   e. I acknowledge and agree that all rights, title and interest in any Confidential Information will remain the exclusive property of the Company. I agree to immediately disclose to the Company all Confidential Information developed in whole or in part by me during the term of my employment with the Company and, where necessary, to assign to the Company any right, title or interest I may have in the Confidential Information. I further agree to execute any instruments and to do all other things reasonably requested by the Company (both during and after my employment with the Company) in order to vest more fully in the Company all ownership rights in those items transferred by me to the Company.

Page 1 of 3

Cutera Canada, Inc. – Proprietary Information Agreement

f.   I agree to hereby waive in whole any moral rights that I may have with respect to the Confidential Information.

2.  **Former Employer Information**
I agree that I will not, during my employment with the Company, improperly use or disclose any proprietary information or trade secrets of any former employer or other person or entity; and that I will not bring onto the premises of the Company any proprietary documents belonging to any such employer, person or entity unless consented to in writing by such employer, person or entity.

3.  **Third Party Information**
I recognize that the Company has received and in the future will receive from third parties their confidential or proprietary information subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. I agree, during my employment and thereafter, to hold all such confidential or proprietary information in the strictest confidence and not to disclose it to any person or entity or to use it except as necessary in carrying out my work for the Company consistent with the Company's agreement with such third party.

4.  **Returning Company Documents**
I agree that upon the termination of my employment with the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, materials, equipment, other documents and all property developed by me pursuant to my employment or otherwise belonging to the Company, its successors or assigns.

5.  **General Provisions**

a.  Entire Agreement: This Agreement constitutes the entire agreement between myself and the Company with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, including but not limited to any understandings, negotiations and discussions, whether oral or written, and there are no warranties, representations or other agreements between myself and the Company in connection with the subject matter hereof except as specifically set forth herein.

b.  Governing Law: This Agreement shall be governed by and construed in accordance with the laws of the Province of Ontario and the laws of Canada applicable therein without reference to conflicts of laws, and I hereby attorn to the exclusive jurisdiction of the courts of that province for the determination of any matter or issue arising from, or relating to, the interpretation or application of this Agreement.

c.  Amendment; Waiver. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be bound. For the Company, only an officer of the Company is authorized to sign a modification, amendment, or waiver. A waiver of any default hereunder or of any of the terms and conditions of this Agreement shall not be deemed to be a continuing waiver or a waiver of any other default or of any other term or condition, but shall apply solely to the instance to which such waiver is directed. No failure or delay by the Company in exercising any power, right or privilege provided in this Agreement will operate as a waiver.

d.  Severability. If any provision, section or subsection of this Agreement is adjudged by any court to be void or unenforceable in whole or in part, this adjudication shall not affect the validity of the remainder of the Agreement, including any other provision, section or subsection. Each provision, section and subsection of this Agreement is separable from every other provision, section and subsection, and constitutes a separate and distinct covenant.

e. **Assignment; Successors.** I may not assign this Agreement without the prior written consent of the Company. Subject to the preceding sentence, this Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors, and its assigns.

Date: Feb 24 | 14

Signature

Jina Kim

Witness:

Signature

JULIE CHAPMAN
Name (typed or printed)

# EXHIBIT G

# THOMPSON & KNIGHT LLP

### ATTORNEYS AND COUNSELORS

CHARLES SHEWMAKE

DIRECT DIAL: 214.969.2122
EMAIL: charles.shewmake@tklaw.com

ONE ARTS PLAZA
1722 ROUTH STREET, SUITE 1500
DALLAS, TX 75201
214.969.1700
FAX 214.969.1751
www.tklaw.com

AUSTIN
DALLAS
FORT WORTH
HOUSTON
NEW YORK

ALGIERS
LONDON
MÉXICO CITY
MONTERREY

January 22, 2020

*Via Federal Express and*
*Electronic Mail - larry.laber@yahoo.com*

Larry Laber
2253 Wild Plains Circle
Rocklin, California 95765

Mr. Laber,

The law firm of Thompson & Knight has been retained in connection with certain issues surrounding your sudden departure from your former employer, Cutera Inc. ("the Company") on January 17, 2020.

As an initial matter, you may recall at the commencement of your employment you executed a number of documents, including but not limited to, an Employee Proprietary Information and Assignment Agreement ("the Agreement"). A copy is attached for your reference.

Section 4 of the Agreement provides:

> Conflicting Employment. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

The Company has reason to believe that you violated this provision of your Agreement. Additionally, based on the facts and the circumstances, as we currently understand them, the Company also has reason to believe you violated your fiduciary duties to the Company while still serving in a senior role as an Executive Vice President of the Company.

Additionally, the Company has reason to believe that you solicited other Cutera employees to go to work with your new employer while you were still employed at Cutera. Such conduct, if proven, is a violation of Section7(a) of your Employee Proprietary Information and Assignment Agreement. Furthermore, to the extent you used confidential salary and compensation information in such recruitment and solicitation, such activity would be a violation of Section7(b) of your Agreement. When you hire a lawyer they will probably tell you that post-employment covenants not to compete or solicit employees are disfavored under California law. To be clear, Cutera is concerned about your activities while you were still an employee and fiduciary of the Company

and there is no provision of California law that would exempt or excuse such conduct while you were still employed with Cutera.

Frankly, given the circumstances of your departure, the Company also has generalized concerns about the misappropriation of other trade secrets or confidential information in violation of your Agreement and other applicable California law. The Company is continuing its investigation into your potential theft of trade secrets and will exercise any and all legal recourse to enforce its rights and protect its confidential information.

Pursuant to your Agreement with the Company, we are prepared to commence arbitration proceedings to address these contractual violations and other legal issues arising out of your employment and subsequent departure. If you have any information or explanation that suggests your conduct was not in violation of the Agreement or in violation of your fiduciary duties, please advise the undersigned *within three (3) business days* of receipt of this letter. If we do not hear from you, we intend take the necessary steps to commence arbitration to protect the Company's rights and any other legal remedies to which we believe we're entitled.

Your Agreement provides for a return of Company property. <u>Section 4</u> provides:

> Company Documents and Other Property. I agree that, at the time my employment with the Company ends, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns. Upon the termination of my employment, I agree to sign and deliver the **"Termination Certification"** attached hereto as Exhibit C or a substantially similar certification provided by the Company.

To date, the Company has not received your Company issued computer nor the return of any other Company property that may be in your possession. *You are hereby instructed not to access or attempt to alter in any way the contents of that computer and to immediately return such equipment (and any other Company documents or property) to the Company. Please be advised that the failure to return the computer or any efforts to alter its contents after your departure could result in sanctions entered against you, including adverse evidence instructions.* Please contact the undersigned at your earliest convenience to arrange for the return of all Company property, including the computer. Also attached is a copy of the Termination Certificate that you should review and return as soon as possible.

As referenced above, <u>Section 4</u> further provides for your completion of a "Termination Certificate." Accordingly, please fill out the **termination certificate attached** and return to the Company (ATTN: General Counsel) or the undersigned as soon as possible, but in any event no later than three (3) business days from receipt of this letter.

In <u>Section 5</u> of the Agreement, you agreed that the Company could inform your new employer of the restrictions contained in the Agreement. On information and belief, we understand your new

employer is Lutronic, Inc. Please confirm this, and advise of the appropriate person at Lutronic that Cutera can contact so that we can ensure that Lutronic (or your new employer if different) has the appropriate information about the contractual restrictions contained in the Agreement.

Finally, because of the likelihood of an adverse arbitration proceeding, you are hereby instructed to retain any and all hard copies and electronically stored information in your possession (including but not limited to documents, correspondence, emails, text messages, social media contacts and messages, and phone records) prior to January 18, 2020 relating to or with :a) your new employer; b) Jonathan, Baker, John Yannocone, and **Jina Kim** or **any other** Cutera employees you communicated with concerning possible employment outside of Cutera; and c) the Company's confidential or trade secret information. If you anticipate that additional information in your possession may also be relevant, please take immediate steps to preserve it. Again, *the failure to preserve such evidence or its willful destruction* could result in sanctions including adverse evidence instructions.

We trust you understand the seriousness of the matters addressed in this letter. While it still may be possible to address the Company's concerns without resorting to an adversarial dispute resolution process, such a resolution will be impossible if you do not abide by your continuing contractual obligations and the instructions contained in this letter. We look forward to hearing from you.

Sincerely,

Charles W. Shewmake, Partner
Thompson & Knight

Enclosures

cc.   Darren Alch

CWS/ky

524931.000001 23048397.2

# THOMPSON & KNIGHT LLP

ATTORNEYS AND COUNSELORS

CHARLES SHEWMAKE

DIRECT DIAL: 214.969.2122
EMAIL: charles.shewmake@tklaw.com

ONE ARTS PLAZA
1722 ROUTH STREET, SUITE 1500
DALLAS, TX 75201
214.969.1700
FAX 214.969.1751
www.tklaw.com

AUSTIN
DALLAS
FORT WORTH
HOUSTON
NEW YORK

ALGIERS
LONDON
MEXICO CITY
MONTERREY

January 24, 2020

*Via Federal Express and*
*Electronic Mail* – jinakim72@gmail.com

Jina Kim
1614 Fell Street, Apartment 1
San Francisco, CA 94117

Ms. Kim,

The law firm of Thompson & Knight has been retained in connection with certain issues surrounding your sudden departure from your former employer, Cutera Inc. ("the Company") on or about January 17, 2020.

As an initial matter, you may recall at the commencement of your employment you executed a number of documents, including but not limited to, a Proprietary Information Agreement ("the Agreement"). A copy is attached for your reference.

Section 1 of the Agreement prohibits the unauthorized disclosure of Confidential Information belonging to the Company:

1.  **Confidential Information**

    a.  In this Agreement, **"Confidential Information"** means any company proprietary information, technical data, trade secrets or know-how, including but not limited to research, product plans, products, services, customer lists and customers, inventions, processes, formulas, technology, designs, drawings, marketing, financial or other business information, disclosed to me by the Company, either directly or indirectly, in writing, orally, or by drawings or observations. Confidential Information does not include any and all information which has been made generally available to the public through no wrongful act of mine or others.

    b.  I agree that is a material term of my employment agreement with the Company that I keep all Confidential Information absolutely confidential and protect it from release to the public. I agree not to divulge, reveal, report or use, for any purpose, any of the Confidential Information which I have obtained or which was disclosed to me by the Company as a result of my employment by

524931.000001 23052867.3

the Company. I agree that if there is any question as to such disclosure, I will seek out an officer of the Company prior to making any disclosure of any Confidential Information that may be covered by this Agreement.

c. The obligations to ensure and protect the confidentiality of the Confidential Information imposed on me in this Agreement and any obligations to provide notice under this Agreement will survive the termination of my employment.

The Company is very concerned that, during the apparently coordinated departure of several employees, including you, certain of Cutera's Confidential Information was or will be disclosed in violation of <u>Section 1</u> of the Agreement. Given the circumstances of your departure, and given that you are apparently still in possession of the Company's computer, the Company also has generalized concerns about the misappropriation of other trade secrets or confidential information in violation of <u>Section 1</u> of the Agreement and other applicable law. We are aware, for example, that you accessed or attempted to access the Company's CRM System (Salesforce) following your resignation from the Company. The Company is continuing its investigation into the potential theft or misappropriation of trade secrets and other Confidential Information. The Company wants you to understand these concerns and to know that it intends to exercise any and all legal recourse to enforce its rights and protect its confidential information.

Pursuant to your Agreement with the Company, we are prepared to commence legal proceedings to address these contractual violations and other legal issues arising out of your employment and subsequent departure. If you have any information or explanation that suggests your conduct was not in violation of the Agreement, please advise the undersigned *within three (3) business days* of receipt of this letter. If we do not hear from you, we intend take the necessary steps to commence legal proceedings to protect the Company's rights and any other legal remedies to which we believe we are entitled.

The Agreement also provides for a return of Company property. <u>Section 4</u> provides:

### 4. **Returning Company Documents**
I agree that upon the termination of my employment with the Company, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, materials, equipment, other documents and all property developed by me pursuant to my employment or otherwise belonging to the Company, its successors or assigns.

To date, the Company has not have received your Company-issued computer nor the return of any other Company property that may be in your possession. *You are hereby instructed not to access or attempt to alter in any way the contents of that computer and to immediately return such equipment (and any other Company documents or property) to the Company. Please be advised that the failure to return the computer or any efforts to alter its contents after your departure could result in sanctions entered against you, including adverse evidence instructions.* You

should also return any Company issued storage devices, information on such devices, as well as any information stored on personal devices, in the cloud or otherwise. Please contact the undersigned at your earliest convenience to arrange for the return of all Company property that may still be in your possession, including the computer.

Finally, because of the possibility of an adverse legal proceeding, you are hereby instructed to retain any and all hard copies and electronically stored information in your possession (including but not limited to documents, correspondence, emails, text messages, social media contacts and messages, and phone records) prior to January 18, 2020 relating to or with :a) your new employer; b) Larry Laber, John Yannocone, and Jonathan Baker or any other Company employees you communicated with concerning possible employment outside of the Company; and c) the Company's confidential or trade secret information. If you anticipate that additional information in your possession may also be relevant, please take immediate steps to preserve it. Again, *the failure to preserve such evidence or its willful destruction* could result in sanctions including adverse evidence instructions.

We trust you understand the seriousness of the matters addressed in this letter. While it still may be possible to address the Company's concerns without resorting to legal proceedings, such a resolution will be impossible if you do not abide by your continuing contractual obligations and the instructions contained in this letter. We look forward to hearing from you.

Sincerely,

Charles W. Shewmake, Partner
Thompson & Knight LLP

Enclosures

cc.     Darren Alch

CWS/ky

ATTORNEYS AND COUNSELORS

ONE ARTS PLAZA
1722 ROUTH STREET SUITE 1500
DALLAS, TX 75201
214 969 1700
FAX 214 969 1751
www.tklaw.com

CHARLES SHEWMAKE
DIRECT DIAL: 214 969.2122
EMAIL: charles shewmake@tklaw.com

AUSTIN
DALLAS
FORT WORTH
HOUSTON
NEW YORK
—————
ALGIERS
LONDON
MEXICO CITY
MONTERREY

January 24, 2020

*Via Federal Express 7776 0277 7320 and*
*Electronic Mail - jyannacone@gmail.com*

John Yannocone
597C Heritage Hills
Somers, NY 10589

Mr. Yannocone,

The law firm of Thompson & Knight has been retained in connection with certain issues surrounding your sudden departure from your former employer, Cutera Inc. ("the Company") on or about January 17, 2020.

As an initial matter, you may recall at the commencement of your employment you executed a number of documents, including but not limited to, an Employee Proprietary Information and Assignment of Inventions Agreement ("the Agreement"). A copy is attached for your reference.

Section 2(a) of the Agreement prohibits the unauthorized disclosure of Confidential Information belonging to the Company:

2. Confidential Information.

(a) Company Information. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of an officer of the Company, any Confidential Information of the Company. I understand that **"Confidential Information"** means Company Trade Secrets and any Company proprietary information, technical data and know-how that is not publicly known. **"Trade Secrets"** means information that derives independent economic value, actual or potential, from not being generally known to the public or other persons who can obtain economic value from its disclosure or use, and is the subject of efforts that are reasonable under the circumstances to maintain its secrecy. For example, Confidential Information may include (but is not limited to) research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, financial or other business information disclosed to me by the Company either directly or indirectly and by any means, including in writing,

524931.000001 23052289.3

orally, by drawings, or by observation of parts or equipment. I will promptly notify the Company if I am legally compelled to disclose any Confidential Information by the order of any court or governmental investigative or judicial agency pursuant to proceedings over which such court or agency has jurisdiction, and I will limit disclosure of Confidential Information consistent with the scope of any such order.

The Company has reason to believe and is very concerned that during the apparently coordinated departure of several employees, including you, certain of Cutera's Confidential Information was disclosed in violation of Section 2(a) of the Agreement. Given the circumstances of your departure, and given that you are apparently still in possession of the Company's computer, the Company also has generalized concerns about the misappropriation of other trade secrets or confidential information in violation of Section 2(a) of the Agreement and other applicable California law. The Company is continuing its investigation into the potential theft or misappropriation of trade secrets and other Confidential Information. The Company wants you to understand these concerns and to know that it intends to exercise any and all legal recourse to enforce its rights and protect its confidential information.

The Company further has concerns about potential violations of Section 4 of the Agreement, which provides:

> 4. Conflicting Employment. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

Additionally, the Company has reason to believe that you solicited other Cutera employees to go to work with your new employer, or other employees may have solicited you while still employed at Cutera. Such conduct, if proven, is a violation of the general duty of loyalty owed by all employees to their employer and is also a violation of Section 7 of the Agreement. We recognize that under California law post-employment covenants not to compete or solicit employees are generally disfavored, and your legal representative will surely confirm this. To be clear however, Cutera is concerned about your solicitation and recruitment activities while still employed with the Company in violation of the Agreement, as well as your duty of loyalty. As mentioned, in California it is well settled law that employees owe their employer a duty of loyalty. Our investigation is ongoing.

Pursuant to your Agreement with the Company, we are prepared to commence arbitration proceedings to address these contractual violations and other legal issues arising out of your employment and subsequent departure. If you have any information or explanation that suggests your conduct was not in violation of the Agreement, please advise the undersigned *within three (3) business days* of receipt of this letter. If we do not hear from you, we intend take the necessary steps to protect the Company's rights and will commence arbitration and/ or seek any other legal remedies to which we believe we are entitled.

The Agreement also provides for a return of Company property. <u>Section 5</u> provides:

> 5. <u>Returning Company Documents and Other Property</u>. I agree that, at the time my employment with the Company ends, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data, notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns. Upon the termination of my employment, I agree to sign and deliver the **"Termination Certification"** attached hereto as <u>Exhibit C or a substantially similar certification provided by the Company</u>.

To date, the Company has not have received your Company-issued computer nor the return of any other Company property that may be in your possession. *You are hereby instructed not to access or attempt to alter in any way the contents of that computer and to immediately return such equipment (and any other Company documents or property) to the Company. Please be advised that the failure to return the computer or any efforts to alter its contents after your departure could result in sanctions entered against you, including adverse evidence instructions.* You should also return any Company issued storage devices, information on such devices, as well as any information stored on personal devices, in the cloud or otherwise. Please contact the undersigned at your earliest convenience to arrange for the return of all Company property that may still be in your possession, including the computer. Also attached is a copy of the Termination Certificate that you should review and return as soon as possible.

As referenced above, <u>Section 5</u> further provides for your completion of a "Termination Certificate." Accordingly, please fill out the **termination certificate attached** and return to the Company (ATTN: General Counsel) or the undersigned as soon as possible, but in any event no later than three (3) business days from receipt of this letter.

Furthermore, in <u>Section 6</u> of the Agreement, you agreed that the Company could inform your new employer of the restrictions contained in the Agreement. On information and belief, we understand your new employer is or soon will be Lutronic, Inc. Pursuant to <u>Section 6</u> please verify whether you have accepted employment with Lutronic or another competitor and provide a supervisory contact at that new employer. Please note, we asked whether you have "accepted" employment with a competitor, not whether you have commenced employment with a competitor. Please advise so that we can ensure that your new employer has the appropriate information about the contractual restrictions contained in the Agreement.

Finally, because of the possibility of an adverse arbitration proceeding, you are hereby instructed to retain any and all hard copies and electronically stored information in your possession (including but not limited to documents, correspondence, emails, text messages, social media contacts and messages, and phone records) prior to January 18, 2020 relating to or with :a) your new employer; b) Larry Laber, Jonathan Baker, and Jina Kim or any other Company employees you communicated with concerning possible employment outside of the Company; or c) the Company's confidential or trade secret information. If you anticipate that additional information

in your possession may also be relevant, please take immediate steps to preserve it. Again, *the failure to preserve such evidence or its willful destruction* could result in sanctions including adverse evidence instructions.

We trust you understand the seriousness of the matters addressed in this letter. While it still may be possible to address the Company's concerns without resorting to an adversarial dispute resolution process, such a resolution will be impossible if you do not abide by your continuing contractual obligations and the instructions contained in this letter. We look forward to hearing from you.

Sincerely,

Charles W. Shewmake, Partner
Thompson & Knight LLP

Enclosures

cc.    Darren Alch

CWS/ky

# THOMPSON & KNIGHT LLP

ATTORNEYS AND COUNSELORS

CHARLES SHEWMAKE
DIRECT DIAL: 214.969.2122
EMAIL: charles.shewmake@tklaw.com

ONE ARTS PLAZA
1722 ROUTH STREET, SUITE 1500
DALLAS, TX 75201
214.969.1700
FAX 214.969.1751
www.tklaw.com

AUSTIN
DALLAS
FORT WORTH
HOUSTON
NEW YORK

ALGIERS
LONDON
MÉXICO CITY
MONTERREY

January 24, 2020

***Via Federal Express 7776 0198 1869 and***
***Electronic Mail - Jonathan_w_baker@yahoo.com***

Jonathan Baker
138 Prospect Ave
Franklin, TN 37064

Mr. Baker,

The law firm of Thompson & Knight has been retained in connection with certain issues surrounding your sudden departure from your former employer, Cutera Inc. ("the Company") on or about January 17, 2020.

As an initial matter, you may recall at the commencement of your employment you executed a number of documents, including but not limited to, an Employee Proprietary Information and Assignment of Inventions Agreement ("the Agreement"). A copy is attached for your reference.

Section 2(a) of the Agreement prohibits the unauthorized disclosure of Confidential Information belonging to the Company:

> 2. Confidential Information.
>
> (a) Company Information. I agree at all times during the term of my employment and thereafter, to hold in strictest confidence, and not to use, except for the benefit of the Company, or to disclose to any person, firm or corporation without written authorization of the Board of Directors of the Company, any Confidential Information of the Company. I understand that **"Confidential Information"** means any Company proprietary information, technical data, trade secrets or know-how, including, but not limited to, research, product plans, products, services, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during the term of my employment), markets, software, developments, inventions, processes, formulas, technology, designs, drawings, engineering, hardware configuration information, marketing, financial or other business information disclosed to me by the Company either directly or indirectly, in writing, orally, by drawings, or by observation of parts or equipment. I further understand that Confidential Information does not include any of the foregoing items which has become publicly known and made generally available through no wrongful act of

mine or of others who were under confidentiality obligations as to the item or items involved.

The Company has reason to believe and is very concerned that during the apparently coordinated departure of several employees, including you, certain of Cutera's Confidential Information was disclosed in violation of <u>Section 2(a)</u> of the Agreement. Given the circumstances of your departure, and given that you are apparently still in possession of the Company's computer, the Company also has generalized concerns about the misappropriation of other trade secrets or confidential information in violation of <u>Section 2(a)</u> of the Agreement and other applicable California law. The Company is continuing its investigation into the potential theft or misappropriation of trade secrets and other Confidential Information. The Company wants you to understand these concerns and to know that it intends to exercise any and all legal recourse to enforce its rights and protect its confidential information.

The Company further has concerns about potential violations of <u>Section 4</u> of the Agreement, which provides:

> 4. <u>Conflicting Employment</u>. I agree that, during the term of my employment with the Company, I will not engage in any other employment, occupation, consulting or other business activity directly related to the business in which the Company is now involved or becomes involved during the term of my employment, nor will I engage in any other activities that conflict with my obligations to the Company.

Additionally, the Company has reason to believe that you solicited other Cutera employees to go to work with your new employer, or other employees may have solicited you while still employed at Cutera. Such conduct, if proven, is a violation of the general duty of loyalty owed by all employees to their employer. We recognize that under California law post-employment covenants not to compete or solicit employees are generally disfavored, and your legal representative will surely confirm this. To be clear however, Cutera is concerned about your solicitation and recruitment activities while still employed with the Company in violation of the Agreement, as well as your duty of loyalty. As mentioned, in California it is well settled law that employees owe their employer a duty of loyalty. Our investigation is ongoing.

Pursuant to your Agreement with the Company, we are prepared to commence arbitration proceedings to address these contractual violations and other legal issues arising out of your employment and subsequent departure. If you have any information or explanation that suggests your conduct was not in violation of the Agreement, please advise the undersigned *within three (3) business days* of receipt of this letter. If we do not hear from you, we intend take the necessary steps to protect the Company's rights and will commence arbitration and/ or seek any other legal remedies to which we believe we are entitled.

The Agreement also provides for a return of Company property. <u>Section 5</u> provides:

> 5. <u>Returning Company Documents</u>. I agree that, at the time my employment with the Company ends, I will deliver to the Company (and will not keep in my possession, recreate or deliver to anyone else) any and all devices, records, data,

notes, reports, proposals, lists, correspondence, specifications, drawings, blueprints, sketches, materials, equipment, other documents or property, or reproductions of any aforementioned items developed by me pursuant to my employment with the Company or otherwise belonging to the Company, its successors or assigns. Upon the termination of my employment, I agree to sign and deliver the **"Termination Certification"** attached hereto as <u>Exhibit C or a substantially similar certification provided by the Company</u>.

To date, the Company has not have received your Company-issued computer nor the return of any other Company property that may be in your possession. *You are hereby instructed not to access or attempt to alter in any way the contents of that computer and to immediately return such equipment (and any other Company documents or property) to the Company. Please be advised that the failure to return the computer or any efforts to alter its contents after your departure could result in sanctions entered against you, including adverse evidence instructions.* You should also return any Company issued storage devices, information on such devices, as well as any information stored on personal devices, in the cloud or otherwise. Please contact the undersigned at your earliest convenience to arrange for the return of all Company property that may still be in your possession, including the computer. Also attached is a copy of the Termination Certificate that you should review and return as soon as possible.

As referenced above, <u>Section 5</u> further provides for your completion of a "Termination Certificate." Accordingly, please fill out the **termination certificate attached** and return to the Company (ATTN: General Counsel) or the undersigned as soon as possible, but in any event no later than three (3) business days from receipt of this letter.

Furthermore, in <u>Section 6</u> of the Agreement, you agreed that the Company could inform your new employer of the restrictions contained in the Agreement. On information and belief, we understand your new employer is or soon will be Lutronic, Inc. Pursuant to <u>Section 6</u> please verify whether you have accepted employment with Lutronic or another competitor and provide a supervisory contact at that new employer. Please note, we asked whether you have "accepted" employment with a competitor, not whether you have commenced employment with a competitor. Please advise so that we can ensure that your new employer has the appropriate information about the contractual restrictions contained in the Agreement.

Finally, because of the possibility of an adverse arbitration proceeding, you are hereby instructed to retain any and all hard copies and electronically stored information in your possession (including but not limited to documents, correspondence, emails, text messages, social media contacts and messages, and phone records) prior to January 18, 2020 relating to or with :a) your new employer; b) Larry Laber, John Yannocone, and Jina Kim or any other Company employees you communicated with concerning possible employment outside of the Company; or c) the Company's confidential or trade secret information. If you anticipate that additional information in your possession may also be relevant, please take immediate steps to preserve it. Again, *the failure to preserve such evidence or its willful destruction* could result in sanctions including adverse evidence instructions.

Page 4

We trust you understand the seriousness of the matters addressed in this letter. While it still may be possible to address the Company's concerns without resorting to an adversarial dispute resolution process, such a resolution will be impossible if you do not abide by your continuing contractual obligations and the instructions contained in this letter. We look forward to hearing from you.

Sincerely,

Charles W. Shewmake, Partner
Thompson & Knight LLP

Enclosures

cc.   Darren Alch