1

2

3

4

5

6

7

8                     UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11                                          |   No.  2:20-CV-00235-KJM-DB
      CUTERA, INC.,
12                                          |
                    Plaintiff,
13                                          |
              v.                                    ORDER
14                                          |
      LUTRONIC AESTHETICS, INC.,
15                                          |
                    Defendant.
16

17          In this trade secrets case between two competitors that develop products used by

18   medical aesthetic professionals, defendant Lutronic Aesthetics, Inc. ("Lutronic") moves to

19   transfer this case to the Northern District of California and moves to dismiss this case.  For the

20   following reasons, the court DENIES defendant's motion to transfer and GRANTS defendant's

21   motion to dismiss, with leave to amend.

22   I.     BACKGROUND

23          The court recounted the facts of this case in detail in its March 13, 2020, order

24   granting plaintiff's request for a temporary restraining order, Order, ECF No. 22, at 1–5, and

25   incorporates that summary by reference here.

26          Defendant Lutronic now moves to transfer this case to the Northern District of

27   California under 28 U.S.C. § 1414(a).  Mot. to Transfer Venue ("MTV"), ECF No. 5.  Plaintiff

28   /////

                                                1

Cutera, Inc. ("Cutera") opposes, MTV Opp'n, ECF No. 40, and defendant has replied, MTV Reply, ECF No. 43.

Defendant also moves to dismiss this case under Rule 12(b)(6) for failure to state a claim for which relief can be granted. Mot. to Dismiss ("MTD"), ECF No. 4.  Plaintiff opposes, MTD Opp'n, ECF No. 39, and defendant has replied, MTD Reply, ECF No. 44.

The court held a hearing by videoconference on both motions on August 4, 2020. ECF No. 47.  At the hearing, the court authorized defendant to file supplemental briefing responding to plaintiff's citation at hearing to *General Creation LLC v. Leapfrog Enterprises, Inc*., 192 F. Supp. 2d 503 (W.D. Va. 2002), and to "correct the record regarding Defendant's corporate structure," which it has done, Suppl. Br., ECF No. 48.[1]

The court addresses each motion in turn, beginning with the motion to transfer venue.  For the following reasons, the court DENIES the motion to transfer venue and GRANTS the motion to dismiss, with leave to amend.

II.      MOTION TO TRANSFER VENUE

A.      Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'"  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).  In evaluating a motion to transfer venue, the court will often consider the following public and private factors: "(1) plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) the location of books and records; (5) which forum's law applies; (6) the interests of justice; and (7) administrative considerations."  *Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746,

_____

[1] In its supplemental brief, defendant clarified that "Lutronic, Inc. is a name Defendant Lutronic Aesthetics, Inc. previously used" and Lutronic Inc. is not the parent of Defendant Lutronic Aesthetics, Inc.  Suppl. Br. at 3–4.

1    759 (C.D. Cal. 2016) (citing 15 Charles A. Wright, Arthur R. Miller, *Federal Practice and*

2    *Procedure*, §§ 3841–55 (2007)).  In the Ninth Circuit, courts will also consider the following

3    factors:

> (1) the location where the relevant agreements were negotiated and
> executed, (2) the state that is most familiar with the governing law,
> (3) the plaintiff's choice of forum, (4) the respective parties' contacts
> with the forum, (5) the contacts relating to the plaintiff's cause of
> action in the chosen forum, (6) the differences in the costs of
> litigation in the two forums, (7) the availability of compulsory
> process to compel attendance of unwilling non-party witnesses, and
> (8) the ease of access to sources of proof.

9    *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000).[2]  The moving party bears

10   the burden of showing transfer is appropriate.  *Commodity Futures Trading Comm'n v. Savage*,

11   611 F.2d 270, 279 (9th Cir. 1979)), *opinion modified*, 828 F.2d 1445 (9th Cir. 1987).  In

12   considering whether to transfer venue, the court may consider facts outside the pleadings,

13   including declarations.  *Cadenasso v. Metro. Life Ins. Co.*, No. 13-CV-05491-JST, 2014 WL

14   1510853, at *2 n.2 (N.D. Cal. Apr. 15, 2014).

15       B.    Discussion

16           Defendant does not meet its burden of showing transfer of venue to the Northern

17   District of California is warranted.[3]  Although no single factor is dispositive, *Cung Le v. Zuffa*,

18   *LLC*, 108 F. Supp. 3d 768, 774 (N.D. Cal. 2015) (citation omitted), and not all factors are

19   necessarily relevant, defendant justifies transfer based almost exclusively on convenience to the

20   parties and witnesses.  Mot. at 13–14.

21           First, defendant argues plaintiff's choice of forum is not entitled to any deference

22   here, because plaintiff "chose to sue in a foreign forum."  *See* Suppl. Br. at 3.  Even if plaintiff's

23

24       [2] In addition to the above considerations, for transfer of venue to occur, "the transferee
court must have subject matter jurisdiction" and "defendants must be subject to personal
25   jurisdiction in the district, and be amenable to service of process there."  *Rubio*, 181 F. Supp. 3d
at 760 (citing *A.J. Industries, Inc. v. U.S. District Court for Central Dist. of Cal.*, 503 F.2d 384,
26   386–88 (9th Cir. 1974)).  Here, personal and subject matter jurisdiction are not in dispute for the
purpose of this motion.  *See* Opp'n at 9 n.7 (conceding this suit "might have been brought" in the
27   Northern District "for purposes of this motion").

28       [3] Because the court does not rely on any of the evidence to which defendant objected, it
does not rule on the objections.  *See* Evidentiary Objs., ECF No. 43-1.

1    choice of forum is accorded less weight when it is not plaintiff's "home" forum, as *Leapfrog*

2    *Enterprises, Inc.*, 192 F. Supp. 2d at 505, suggests, it is still the movant's burden to show transfer

3    is warranted.  Defendant has not met that burden.

4               Primarily, defendant relies on the fact that one of the former Cutera employees

5    accused of stealing trade secrets, Jina Kim, resides in the Northern District, and two others, who

6    reside on the East Coast, can more easily travel to the Northern District than to the Eastern

7    District because the former contains more airports.  MTV at 13 (citing Baker Decl. ¶ 4, ECF No.

8    5-3; Kim Decl. ¶ 4, ECF No. 5-5; Yannocone Decl. ¶ 4, ECF No. 5-4); Reply at 7.  However, as

9    plaintiff counters, Larry Laber, the "ringleader" of the alleged scheme to misappropriate

10   plaintiff's trade secrets, resides in Placer County, California, in the Eastern District.  Opp'n at 13–

11   214 & n.9 (citing Laber Decl. ¶ 5, ECF No. 5-2).  In other words, at least one key witness resides

12   in each district.  Further, if the allegations involving Mr. Laber are true, much of the relevant

13   activity took place in Mr. Laber's home, where he conducted his work for Cutera, *see* Laber Decl.

14   ¶¶ 4–5 (noting location of Laber's home); Mot. at 13–14, and likely for Lutronic as well,

15   suggesting "the contacts relating to the plaintiff's cause of action in the chosen forum" weigh

16   against transferring venue.  *See Jones*, 211 F.3d at 498–99.

17              As for the remaining former employee witnesses, the court finds the inconvenience

18   imposed by conducting this action in the Eastern District is negligible given the relative

19   geographic proximity of the Eastern and Northern Districts, *see B&G Foods N. Am., Inc. v.*

20   *Embry*, No. 2:20-CV-00526-KJM-DB, 2020 WL 3605070, at *2 (E.D. Cal. July 2, 2020), and the

21   likely availability of delivering testimony by taped deposition, *see* MTV Opp'n at 15–16, if the

22   court allows.

23              Two of defendant's remaining arguments are about plaintiff's relationship to the

24   forum: (1) that the Northern District is more convenient for the parties because plaintiff is located

25   there and (2) that the forum selection clause in Cutera's arbitration agreement with its former

26   employees counsels in favor of transferring.  While these facts may suggest transfer to the

27   Northern District would not greatly inconvenience plaintiff, they fail to show significant

28   inconvenience or unfairness would result from the case remaining in this district, and thus are

4

1    insufficient to warrant "upsetting the plaintiff's choice of forum." *Decker Coal Co. v.*

2    *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986) ("The defendant must make a

3    strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." (citation

4    omitted)); *Shultz v. Hyatt Vacation Mktg. Corp.*, No. 10-CV-04568-LHK, 2011 WL 768735, at *3

5    (N.D. Cal. Feb. 28, 2011) ("Generally, the plaintiff's choice of forum is treated with great

6    deference, and only significant inconvenience or unfairness will justify transfer." (citation

7    omitted)).

8         Finally, defendant argues that plaintiff engaged in forum shopping by filing in the

9    Eastern District to avoid the Northern District's more strict application of California Code of

10   Civil Procedure section 2019.210, which requires a plaintiff to identify its trade secrets with

11   reasonable particularity before discovery may commence.  Defendant does not cite authority

12   identifying this consideration as a relevant factor for the court to consider in deciding a motion to

13   transfer venue.  Regardless, the court is not convinced that allowing plaintiff to maintain its suit

14   in the Eastern District runs counter to the interests of justice, given it is not clear the Northern

15   District uniformly applies California Civil Procedure Code section 2019.210 before allowing

16   discovery nor that the Eastern District uniformly does not.  *See, e.g.*, *Alta Devices, Inc. v. LG*

17   *Elecs., Inc.*, 343 F. Supp. 3d 868, 882 (N.D. Cal. 2018) (suggesting "California Civil Procedure

18   Code § 2019.210 has no place at the pleading stage") (citing, *inter alia*, *Rockwell Collins, Inc. v.*

19   *Wallace*, No. SACV 17-01369 AG (JCGx), 2017 WL 5502775 (C.D. Cal. Nov. 10, 2017)).

20   Moreover, as discussed at hearing, defendant is free to move the court to apply section 2019.210

21   here.

22        C.    Conclusion

23        For the foregoing reasons, Lutronic's motion to transfer venue is DENIED.

24   III.   MOTION TO DISMISS

25        A.    Legal Standard

26        Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

27   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

28   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

1   under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

2   1990).

3          Although a complaint need contain only "a short and plain statement of the claim

4   showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

5   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

6   claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

7   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

8   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

9   conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Id.* (quoting

10  *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to dismiss

11  for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

12  its judicial experience and common sense." *Id.* at 679.  Ultimately, the inquiry focuses on the

13  interplay between the factual allegations of the complaint and the dispositive issues of law in the

14  action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

15         In making this context-specific evaluation, this court must construe the complaint

16  in the light most favorable to the plaintiff and accept as true the factual allegations of the

17  complaint. *Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).  This rule does not apply to "a legal

18  conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986) *quoted*

19  *in Twombly*, 550 U.S. at 555, nor to "allegations that contradict matters properly subject to

20  judicial notice" or to material attached to or incorporated by reference into the complaint.

21  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir. 2001).

22         B.      Discussion

23                 1.      CUTSA and DTSA Trade Secrets Claims

24         In its motion to dismiss, defendant argues plaintiff's claims based on the California

25  Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426, *et seq.*, and Defend Trade Secrets

26  Act ("DTSA"), 18 U.S.C. § 1836, should be dismissed, because plaintiff has not adequately pled

27  misappropriation and has not pled its trade secrets with sufficient particularity.  Mot. at 12–14.

28  /////

1   Plaintiff counters that the court already decided these issues in plaintiff's favor when it granted

2   plaintiff's motion for a TRO.  Opp'n at 11, 13 (citing Order, ECF No. 22, at 7–8, 10).

3          The court finds that plaintiff has sufficiently put defendant on notice of its claims

4   with respect to misappropriation, for the same reasons articulated in the TRO Order.  *See* Order at

5   10–11.  However, the court further analyzes defendant's argument regarding the specificity of the

6   alleged trade secrets below.

7          In its order granting plaintiff's motion for a TRO, the court detailed the legal

8   standard for a claim under CTSA and DTSA.  *See* Order at 6–7.  At the motion to dismiss stage,

9   "[a] plaintiff need not spell out the details of the trade secret . . . but must describe the subject

10  matter of the trade secret with sufficient particularity to separate it from matters of general

11  knowledge in the trade or of special persons who are skilled in the trade, and to permit the

12  defendant to ascertain at least the boundaries within which the secret lies."  *Zoom Imaging Sols.,*

13  *Inc. v. Roe*, No. 219CV01544WBSKJN, 2019 WL 5862594, at *4 (E.D. Cal. Nov. 8, 2019)

14  (internal citations omitted).

15         In its order on the TRO, the court analyzed plaintiff's trade secrets claims at

16  length.  In determining that plaintiff established a likelihood of success on the merits, this court

17  found "[f]or the purposes of this motion, the court is satisfied that at least some of the Cutera

18  Trade Secret Information consists of sufficiently identified compilations of information that

19  'derive[] independent economic value, actual or potential, from not being generally known to the

20  public.'"  Order at 8 (quoting Cal. Civ. Code § 3426.1(d)(1)).  While this remains the case at the

21  motion to dismiss stage, the precise query is different; the court is not analyzing whether plaintiff

22  will likely succeed on at least one of its trade secrets claims, but whether plaintiff has sufficiently

23  put defendant on notice of the contours of its complaint such that allowing discovery will not

24  unleash a "fishing expedition."  *See Biltmore Assocs., L.L.C. v. Twin City Fire Ins. Co.*, No. CV-

25  05-4220-PHX-FJM, 2006 WL 2091667, at *1 (D. Ariz. July 21, 2006) ("The motion to dismiss

26  therefore forms a bulwark against unmeritorious actions and fishing expeditions."), *aff'd on other*

27  *grounds*, 572 F.3d 663 (9th Cir. 2009).

28  /////

7

1   First, with this in mind, the court finds that some of plaintiff's trade secrets are

2   sufficiently defined such that they put defendant on notice.  For example, plaintiff's first alleged

3   trade secret is:

4   Cutera's confidential customer contract information, including
    current and prospective customer names and contact information
5   compiled through internal research, sales lead and call information
    and records, confidential information related to undisclosed pricing,
6   historical quote history, discount information, payment terms offered
    to customers or potential customers, reasons for changes to quotes,
7   analyses of customer demands, preferences, feedback and needs,
    previous discussions with customers, regarding prior and potential
8   new projects, and proposed technical engineering specification
    stored on Cutera computers, servers, information related to product
9   reliability and warranty information, and Cutera's salesforce.com
    database[.]
10

11   Compl. ¶ 18.  This is sufficiently definite to guide discovery in this case in a reasonably focused

12   and fair manner.  *See Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, 873 F. Supp. 2d 1192,

13   1214–15 (N.D. Cal. 2012) (finding "confidential customer-related information including

14   customer lists and contact information, pricing guidelines, historical purchasing information, and

15   customers' business needs/preferences" is "type of information [that] is routinely given trade

16   secret protection"), *on reconsideration on other grounds*, No. C 10-3428 PSG, 2012 WL

17   12925716 (N.D. Cal. July 8, 2012).  Similarly, plaintiff's third trade secret is sufficiently defined:

18   "Cutera's confidential sales reports containing detailed customer pricing information for specific

19   customers, customer discounting information, and ordering information for Cutera products[.]"

20   Compl. ¶ 18; *see Morlife, Inc. v. Perry*, 56 Cal. App. 4th 1514, 1521 (1997) (accepting trial

21   court's finding that roofing company's customer list containing "pricing information and

22   knowledge about particular roofs and roofing needs of customers using its services" was

23   protectable trade secret).  Others, however, such as plaintiff's seventh alleged trade secret, require

24   further definition.  *See* Compl. ¶ 18 ("Cutera product information, including product

25   specifications and features, development plans, including for new products, new product launch

26   dates and schedules, pipelines, product reliability information, and roadmaps."); *see Power*

27   *Integrations, Inc. v. Silanna Semiconductor N. Am., Inc.*, No. CV 19-1292-LPS, 2020 WL

28   3508078, at *3 (D. Del. June 29, 2020) (finding trade secret insufficiently defined when it "recites

8

1   broad categories of information" such as "product specifications, product forecasts, definitions,

2   designs, research and development").

3          Second, as defendant points out, the complaint includes a non-exhaustive list of

4   trade secrets; to the extent such a list sweeps in a raft of unspecified assets, it falls short of

5   providing defendant the contours of the trade secrets claim.  *See* Compl. ¶ 18 ("The Trade Secret

6   Information Cutera has developed and possesses includes, but is not limited to: . . . .").  This list is

7   referenced throughout the complaint as "Cutera Trade Secret Information," so when plaintiff

8   alleges "Defendant Lutronic has misappropriated, and threatens to misappropriate, Cutera Trade

9   Secret Information," it alleges Lutronic has misappropriated any number of undefined trade

10  secrets.  A judge of this court came to a similar conclusion in *Zoom Imaging Sols., Inc.*, 2019 WL

11  5862594, at *5.  There, the plaintiff alleged a non-exhaustive list of "Confidential Information"

12  and its trade secrets claim was based on "an unknown subset of the indefinite Confidential

13  Information"; therefore "plaintiff [did] not sufficiently identify anything." *Id.*  As is the case

14  here, "[t]he Complaint gives defendants no clue whatsoever about what information forms the

15  basis of plaintiff's misappropriation claim." *Id.*

16         For these reasons, the court finds not all of plaintiff's trade secrets claims are

17  sufficiently defined here.  Plaintiff's first and second claims are DISMISSED with leave to amend

18  to correct these deficiencies, including by omitting the overbroad "includes but not limited to"

19  language.

20              2.    RICO Claim

21         Under 18 U.S.C. § 1962(c), it is unlawful "for any person employed by or

22  associated with any enterprise . . . to conduct or participate, directly or indirectly, in the conduct

23  of such enterprise's affairs through a pattern of racketeering activity[.]"  18 U.S.C. § 1962(c).

24  "Racketeering activity" is defined as any number of "generically specified criminal acts as well as

25  the commission of one of a number of listed predicate offenses."  *Sosa v. Directv, Inc.*, 437 F.3d

26  923, 939 (9th Cir. 2006) (citing 18 U.S.C. § 1961(1)).  The elements of a RICO claim are

27  "(1) conduct; (2) of an enterprise; (3) through a pattern (4) of racketeering activities (known as

28  'predicate acts'); (5) causing injury to the plaintiff's 'business or property.'"  *Grimmett v. Brown*,

75 F.3d 506, 510 (9th Cir. 1996) (quoting 19 U.S.C §§ 1964(c), 1962(c)).  A "pattern of racketeering activity" requires at least two predicate acts. 18 U.S.C. § 1961(1), (5).

On reply, defendants focus on the "pattern" element of plaintiff's RICO claim, which requires a degree of continuity.  MTD Reply at 3–6.  The Supreme Court has explained that "'[c]ontinuity' is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989).

Plaintiff does not argue it has alleged "closed" continuity, or "a series of related predicates extending over a substantial period of time." *Id.* at 242; *see* Compl. ¶ 9 (alleging events occurring January 2020 at the earliest); *Religious Tech. Ctr. v. Wollersheim*, 971 F.2d 364, 36–67 (9th Cir. 1992) (suggesting pattern of activity lasting less than year insufficient for RICO claim).  Rather, plaintiff argues it has alleged "past conduct that by its nature projects into the future with a threat of repetition." *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 241–42 (1989).  Plaintiff argues it has alleged that defendant's "targeting, soliciting, and hiring key Cutera sales employees, instructing/encouraging them in the process to steal and bring with them Cutera trade secrets," will continue in the future, because defendant will "us[e] said trade secrets to again target, solicit, and hire a new batch of Cutera employees with additional Cutera trade secrets."  Opp'n at 18 (citing Compl. ¶¶ 10, 11, 15–16, 21, 24).   Plaintiff's argument, however, does not reflect what is in the complaint; the complaint itself does not plead facts showing defendant is engaged in a "cycle" such that it is likely to continue using plaintiff's trade secrets to hire more Cutera employees.  It alleges only that, on information and belief:

> Defendant Lutronic has not only used Cutera Trade Secret Information to solicit and hire Cutera employees, it has hired the Former Cutera Employees and other Cutera employees for the purpose of obtaining Cutera's Trade Secret Information [and] Defendant Lutronic instructed and/or encouraged the Former Cutera Employees . . . to deliver Cutera Trade Secret Information to Lutronic to use for hiring purposes or otherwise.

Compl. ¶ 24.  This is insufficient to put defendant on notice of a "cycle" of criminal behavior sufficient for a RICO claim.

/////

10

1    Accordingly, plaintiff's RICO claim is DISMISSED.  Defendant argues the court

2    should not grant leave to amend because "it is clear [plaintiff] cannot truthfully allege continuity

3    of the predicate acts."  Reply at 6.  At hearing, however, plaintiff's counsel represented that

4    plaintiff is able to plead additional factual allegations that defendant has continued committing

5    predicate acts even after the injunction issued in this case.  Accordingly, leave to amend is

6    GRANTED.

7                    3.    State Law Claims

8    The parties appear to agree that CUTSA impliedly preempts other noncontract[4]

9    state-law claims based on the "same nucleus of facts as the misappropriation of trade secrets

10   claim."  Opp'n at 19 (quoting *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171

11   Cal. App. 4th 939, 958 (2009)); *see also Copart, Inc. v. Sparta Consulting, Inc.*, 277 F. Supp. 3d

12   1127, 1156–57 (E.D. Cal. 2017) (collecting cases).  CUTSA does not displace "noncontract

13   claims that, although related to a trade secret misappropriation, are independent and based on

14   facts distinct from the facts that support the misappropriation claim."  *Angelica Textile Servs.,*

15   *Inc.*, 220 Cal. App. 4th at 506.  On a motion to dismiss, the court considers "whether, stripped of

16   facts supporting trade secret misappropriation, the remaining factual allegations can be

17   reassembled to independently support other claims for relief."  *Swarmify, Inc. v. Cloudflare, Inc.*,

18   2018 WL 1609379, at *2 (N.D. Cal. Apr. 3, 2018) (citation omitted).

19   Defendant argues plaintiff's fourth claim (tortious interference with prospective

20   advantage), fifth claim (tortious interference with prospective economic advantage), sixth claim

21   (unfair competition) and seventh claim (aiding and abetting) are preempted, because they arise

22   from the same nucleus of facts as the CUTSA claim.  Mot. at 8.  Cutera argues that CUTSA

23   preemption does not apply because those causes of action involve allegations in addition to the

24   trade secrets claim.  Opp'n at 19–22.

25   At base, plaintiff's allegations are the same for all three state claims: (1) the claims

26   are based on the misappropriation of confidential information that is not necessarily a trade secret

27

28   _____

     [4] *See Angelica Textile Servs., Inc. v. Park*, 220 Cal. App. 4th 495, 506 (2013).

                                                    11

1   or (2) the claims are based on Lutronic's "luring" Cutera employees to defect and work for

2   Lutronic. *See id*.  The first argument does not save the claims; as this court has previously

3   concluded, CUTSA may preempt a claim for misappropriation of confidential information even if

4   the information does not ultimately meet the statutory definition of a trade secret.  *See Copart,*

5   *Inc.*, 277 F. Supp. 3d at 1158 (citing, *inter alia*, *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-

6   00694-LHK, 2012 WL 6160472, at *5 (N.D. Cal. Dec. 11, 2012)); *but see Leatt Corp. v.*

7   *Innovative Safety Tech.*, LLC, No. 09-CV-1301-IEG (POR), 2010 WL 2803947, at *6 n.5 (S.D.

8   Cal. July 15, 2010) ("Plaintiffs' unfair competition and tortious interference claims are not

9   preempted by the [California] UTSA to the extent they depend on the misappropriation of

10  otherwise confidential or proprietary, but not trade secret, information.").  Plaintiff's second

11  argument is potentially meritorious; to the extent plaintiff's claims are based on luring the Cutera

12  employees away from Cutera, they are based on facts independent from the misappropriation of

13  trade secrets and are not preempted.  The court analyzes each claim with this framework in mind

14  below and, where necessary, addresses defendant's additional arguments that plaintiff has failed

15  to state a claim.

16                      a)      Tortious Interference with Contractual Relations

17              According to the complaint, Cutera's fourth claim rests on the allegation that

18  "Lutronic intentionally induced the Former Cutera Employees to breach their obligations to

19  Cutera, and to instead provide Cutera Trade Secret Information to Lutronic (including while they

20  were still employed by Cutera), thereby violating their duties to Cutera."  Compl. ¶ 61.  The claim

21  does not include any other allegations regarding how the Former Cutera Employees breached

22  their obligations to Cutera.  Therefore, this claim is based on the employees' providing "Trade

23  Secret Information to Lutronic," and the claim is preempted by CUTSA.  *See Hiossen, Inc. v.*

24  *Kim*, No. CV1601579SJOMRWX, 2016 WL 10987365, at *14 (C.D. Cal. Aug. 17, 2016)

25  (finding interference with contractual relations claim preempted by CUTSA).  Plaintiff's fourth

26  claim is accordingly DISMISSED with leave to amend.  Because the court dismisses the claim as

27  preempted, it need not address whether the claim must also be dismissed for failure to state a

28  claim.

1      b)  <u>Tortious Interference with Prospective Economic Advantage</u>

2     Plaintiff's fifth claim, for tortious interference, is based on the allegation that

3 Lutronic "induce[d] the Cutera employees in question to terminate their business relationships

4 with Cutera, and instead do business, directly or indirectly, with Lutronic and/or its affiliates."

5 Compl. ¶ 69.  On its face, this allegation does not necessarily arise out of the same nucleus of

6 facts as the CUTSA claim, but rather relates to Lutronic's alleged hand in prompting several of

7 Cutera's employees to leave the company to work for a competitor.  As such, it is not preempted

8 by the CUTSA claim.  *See Swarmify, Inc.*, 2018 WL 1609379, at *2.

9     However, plaintiff's claim for tortious interference with prospective economic

10 advantage is not well-pled.  Lutronic argues plaintiff has not alleged a key element of such a

11 claim: "intentional wrongful acts on the part of the defendant" designed, in this case, to lure away

12 Cutera's employees.  Mot. at 22 (citing *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th

13 1134, 1154 (2003)).  In response, Cutera is unable to point to any specific "wrongful acts" on the

14 part of Lutronic that are unrelated to the misappropriation of trade secrets and are not simply a

15 restatement of Cutera's other legal claims.  *See* Opp'n at 21 ("Cutera alleges that those illegal and

16 wrongful actions included unfair competition and aiding and abetting (including fraudulent

17 conduct and 'efforts to induce Cutera employees to breach their fiduciary duties and/or their duty

18 of loyalty to Cutera,'). . . ." (citing Compl. ¶ 69)).  Plaintiff's conclusory allegations of

19 "fraudulent conduct" and "efforts to induce Cutera employees to breach their fiduciary duties" are

20 insufficient to put defendant on notice of the basis of plaintiff's claim.  Accordingly, plaintiff's

21 fifth claim is DISMISSED with leave to amend.

22      c)  <u>Unfair Competition</u>

23     Plaintiff's sixth claim for unfair competition claim is based on Lutronic:

24     (a) misappropriating Cutera Trade Secret Information; (b) interfering
      with Cutera's actual and prospective economic relations, and
25     (c) aiding and abetting the above reference wrongful conduct on the
      part of the Former Cutera Employees in order to obtain a competitive
26     advantage over Cutera in the marketplace.

27 Compl. ¶ 74.  Insofar as the claim is based on "misappropriating Cutera Trade Secret

28 Information," the claim is clearly preempted by CUTSA.  However, the claim is also based on the

same allegations as plaintiff's tortious interference with prospective economic advantage claim, as evidenced by ground (b) in the excerpt above, and for the same reasons previously discussed, it is not preempted.

However, plaintiff's sixth claim must be dismissed for the same reason as plaintiff's fifth claim.  Though plaintiff argues in its opposition that the claim is based in part on Lutronic's luring away Cutera's employees, the complaint does not allege sufficiently specific facts to that effect.  *See* Compl. ¶ 74.  The court is unable to analyze whether such a factual scenario would give rise to an unfair competition claim.  The claim is DISMISSED with leave to amend.

                                                                          d)       <u>Aiding and Abetting</u>

Similarly, plaintiff's seventh claim for aiding and abetting is preempted insofar as it is based on the allegation Lutronic "help[ed] Laber and the other Former Cutera Employees achieve their desired outcome in their efforts to misappropriate Cutera's Trade Secret Information."  Compl. ¶ 80.  However, this claim also contains an independent allegation that Lutronic assisted those same employees "orchestrate a mass defection to Lutronic, and in doing so breaching their duties to Cutera," *id.*, and, for the same reasons previously discussed, the claim as narrowed is not preempted.

As for whether the claim is sufficiently pled, an aiding and abetting claim requires the defendant "knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act."  *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325 (Cal. Ct. App. 1996).  Defendant argues the claim fails to allege facts showing (1) that defendant had knowledge Cutera's employees' acts breached their duty to Cutera and (2) any conduct by Lutronic that constitutes substantial assistance and when it occurred.  Mot. at 25. Plaintiff alleges:

> Upon information and belief, Lutronic knew that Laber and the other Cutera Former Employees owed their employer Cutera fiduciary duties and/or a duty of loyalty, and knew that they were breaching said duties . . . taking steps to orchestrate a mass defection of Cutera's employees to Lutronic while still employed by Cutera.

1
2
3
4

> Despite such knowledge, Lutronic aided and abetted Laber and/or the other Former Cutera Employees in breaching their duties to Cutera. Lutronic provided substantial assistance and actively participated in helping Laber and the other Former Cutera Employees achieve their desired outcome in their efforts to . . . orchestrate a mass defection to Lutronic, and in doing so breaching their duties to Cutera. Lutronic specifically intended to facilitate the Former Cutera Employee's wrongful conduct.

5   Compl. ¶ 80.

6          Though the question of defendant's knowledge is "peculiarly within the possession

7   and control of the defendant," *Menzel v. Scholastic, Inc.*, 2018 WL 1400386, at *2 (N.D. Cal.

8   Mar. 19, 2018) (citation omitted), defendant is correct that plaintiff advances only conclusory

9   allegations that Lutronic facilitated the Cutera employees' actions.  More specific facts are

10  needed to put defendant on notice of the basis of the claim.  Accordingly, plaintiff's seventh

11  claim is also DISMISSED with leave to amend.

12         C.      Conclusion

13         For the foregoing reasons, all of plaintiff's claims are DISMISSED with leave to

14  amend, *see Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)

15  (explaining leave to amend should be granted with "extreme liberality"); the portions of

16  plaintiff's claims that survive the motion to dismiss as outlined above may be included in any

17  amended complaint.

18  IV.    CONCLUSION

19         Defendant's motion to transfer venue is DENIED and defendant's motion to

20  dismiss is GRANTED in part.  Because the court did not rely on any of the evidence advanced in

21  plaintiffs' requests for judicial notice, ECF Nos. 41–42, with the exception of documents that

22  were already available on the docket in this case, the requests are DENIED as moot.  Plaintiff

23  SHALL file any first amended complaint within 21 days of this order.

24         This order resolves ECF Nos. 4, 5, 41, and 42.

25         IT IS SO ORDERED.

26  DATED:  August 24, 2020.

27                                      _____
                                        CHIEF UNITED STATES DISTRICT JUDGE
28